(Decided 9th February, 1875.)

---

# The Baltimore Permanent Building and Land Society *vs.* George W. Taylor.

*Construction of words used in the sixth section of the Act of 1867, ch. 358, Incorporating the Baltimore Permanent Building and Land Society— Usurious Mortgage.*

A mortgage executed by the appellee to the appellant incorporated by the Act of 1867, ch. 358, recited that the "mortgagor being a member of said body corporate has received therefrom an advanced loan of $3600 on nine shares of its stock held by him in his own name." It also covenanted that the mortgagor "in consideration of the use, benefit and advantages derived to him through the mortgagee's consent to accept repayment of said loan in said fractional proportions, extending through a period of ten years, in

accordance with the table of rates," would pay "the weekly sum of eleven dollars and sixteen cents for 520 weeks, computing from the 10th of October, 1867, and ending on the 10th of October, 1877, the loan being repayable in ten years by payment of the weekly dues upon nine shares, *with weekly interest, at the rate of six per cent. per annum upon the par value of said nine shares.*" The mortgagor received only $2700, and the par value of the shares was $400 each, making for the nine $3600. The sixth section of the Act incorporating the appellant permitted the mortgage which the Society might take as security, to stipulate for the payment of weekly instalments on the shares redeemed or sold, "*together with interest on the sum so paid or advanced.*" HELD :

That the words, "*together with interest on the sum so paid or advanced,*" used in the sixth section of the Act incorporating the appellant, mean interest on the sum actually received by the mortgagor from the Society, and not interest on the par value of the shares on which the advance was made; and consequently the mortgage executed by the appellee to the appellant, in stipulating that the mortgagor should pay weekly interest, at the rate of six per cent. per annum upon the *par value of the shares*, which was $900 in excess of the sum he actually received from the mortgagee, was usurious.

APPEAL from the Circuit Court of Baltimore City.

On the 3rd of October, 1867, the appellee applied to the appellant for a loan, on redemption of nine shares of its stock held by him for which he had subscribed, and the Society agreed to redeem or purchase from him at the sum of $2700 ; and in order to secure the payment of the face of said shares, to wit: $3600 (the value of each share being $400,) in weekly instalments of $11.16, together with weekly interest at the rate of six per cent. per annum for a period of ten years, the appellee on the 29th of October, 1867, executed to the Society a mortgage of certain leasehold property, situate in the city of Baltimore. The character and terms of this mortgage are sufficiently set out in the opinion of this Court. The appellee having made default in the payment of the weekly dues, the appellant on the 16th of March, 1872, filed its petition for an *ex parte* decree for the sale of the mortgaged property ; and on the same day a decree was accordingly passed. On the 1st of June, following, the appellee filed his petition, stating

that being desirous to borrow money to purchase a dwelling house, he applied to and obtained from the appellant on the 29th of October, 1867, a loan of $2700; that at the time of obtaining the loan he executed and delivered to the appellant the mortgage filed in the cause, the language and terms of which he did not read and did not understand, but took it as it was represented to him as being a security or indemnity to the Society against any loss that might befall it by reason of any failure of the petitioner to repay the amount loaned.

The petitioner further stated that of the $3600 mentioned in the mortgage as having been loaned to the petitioner, he really received but $2700; and that on account of said loan of $2700, he had paid in two hundred and nineteen weekly payments of $11.16 each, the gross sum of $2444.04; that being desirous to obtain a settlement of the loan, he had applied to the Society for leave to return the unpaid balance, so that the mortgage could be paid and his property released; and had in pursuance of such purpose offered a return of the money loaned, and to pay for the use thereof, to the Society, interest thereon at the rate of eight per cent. per annum; but that this offer had been refused and a demand made upon him for the payment of $2119.72. The petitioner presented the following statement of his indebtedness to the Society:

| | | |
|---|---:|---:|
| Amount loaned in cash on the mortgage........ ... | $2,700 | 00 |
| Amount of interest on same for 219 weeks...... | 682 | 65 |
| Amount of loan and the interest thereon........ | $3,382 | 65 |
| Amount of weekly dues paid in 219 weeks, ($11.16 per week,)....... $2444.04 | | |
| Amount of interest on these payments for 219 weeks  .....  ..............  308. 96 | | |
| Amount of payments and interest on the payments.................................. | 2,753 | 00 |
| Amount due the corporation on the mortgage.......................................... | $629 | 65 |

The petitioner also stated, that being desirous to pay whatever amount of money was really owing to the Society on account of the loan, he was ready to bring into Court the sum of $629.65, or any other sum the Court should require, to be deposited to the credit of the case, and await an adjudication of his rights in the premises. The petition further stated that the trustee in the decree was about to sell the property, and prayed that he might be restrained until the further order of the Court, and that the complainant should answer the allegations of the petition.

The complainant answered the petition, denying among other things, the correctness of the statement of the indebtedness of the petitioner as set forth by him, and the tender of any sum or sums of money at any rate of interest. Under a commission issued by consent, testimony was taken and returned. After hearing, the Court referred the case to the auditor to ascertain the amount due on the mortgage in conformity with the principles of the opinion pronounced by the Court. The auditor stated an account upon the theory that the amount loaned by the Society was $2700, and showed a balance of $723.88, due by the mortgagor, as of the 1st of June, 1872. To this account exceptions were filed by the complainant. The Court, (PINKNEY, J.,) passed an order overruling the exceptions and ratifying the account. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, GRASON and MILLER, J.

*Samuel Snowden,* for the appellant.

The appellee subscribed for nine shares of stock of the appellant, and thus became a member of, and stockholder in, the corporation; he then applied to redeem the said shares so subscribed for by him, and offered certain property as security for the unpaid instalments on said shares,

and interest, which was accepted by the appellant, and it accordingly redeemed or purchased his nine shares *" at the price which he agreed to receive"* therefor, to wit: $300 per share, making the sum of $2700.   This was not a loan of money to the appellee, which is a necessary ingredient to constitute usury.   *Tyler on Usury,* 109 ; *Smith vs. Beach,* 3 *Day,* 268, (271 ;) *Perrine vs. Hotchkiss,* 2 *Lansing,* 416. But it was a sale by the appellee and a purchase by the appellant of the stock in accordance with the provisions of its charter.   Section 6 of its Act of Incorporation, authorizes it *" at any time* in advance of the period of time at which the several instalments on the shares of stock of any member shall become due and entirely paid up, according to the provisions of the fourth section, to redeem the same, and to advance to such member the par value of $400 per share thereof for any number of shares held by him *at such sum or price as such member may agree to receive."* In accordance with this provision the contract with the appellee was entered into, it being thereby vested with full power to make it.   By subscribing for the shares of stock the appellee became bound to pay to the appellant the sum of $3,600, whether the society was prosperous or not, or whether the shares would be worth $400 at the time when they should be fully paid up or not, and he would also be compelled to share in all the losses that might occur in the management of the society during that period, but by redeeming the shares he was released from the payment of any losses that the society might meet with, and from all obligations except the repayment by the instalments.   The value of this release could not be computed, and was therefore the subject of a lawful agreement.   *Bowker vs. Mill River L. F. Co.,* 7 *Allen,* 100.

If instead of buying the shares from Taylor, and paying him the money therefor, the appellant had issued to him certificates for nine shares of full paid stock, and taken from him a mortgage to secure the payment of the weekly

instalments upon such nine shares, with interest in accordance with section four of its charter, the transaction would have been perfectly legal and clear of all objection. *Junction R. R. vs. Bank of Ashland*, 12 *Wall.*, 226.

Taylor would, however, have been at the risk of the value of the shares at the time when they would be fully paid up. In order, therefore, to relieve himself from this risk, he sells his shares to the appellant at a sum which he is willing to receive for what he considers their present value, and the appellant pays him the money therefor; and as he has not in fact paid for the shares, he executes to the society a mortgage to secure the unpaid instalments thereon. The risk of the value of the shares at the time when they should be fully paid up, is therefore taken by the society. For when that period arrived, the losses, &c. of the society might be so great that the shares might not be worth the amount paid for them. It therefore put its money at risk, by purchasing the shares of the appellee, and when money is put at risk there can be no usury. *Ex Parte Wilson*, 2 *Jur.*, 98, (*C. R.*)

The only difference between the mortgage and the terms of the charter, (sec. 7,) is, that interest is included on $3,600, when it should have been on $2,700, the amount "*paid or advanced*," upon which amount the society was entitled to be paid interest, during the existence of the mortgage. There is nothing in the charter which requires that the redeemed shares should be paid up in 400 weeks. This is left open to the agreement of the parties, and it was perfectly competent for the borrower and association to extend the time for the payment to ten or more years. This enables the borrower to make his arrangements with greater precision, according to his anticipated income, and various other circumstances of which he alone can form a correct judgment. *Stone on Building Societies*, 14 and 46; *Barry on Building Societies*, 14 and 46.

There is no rule upon which the action of the Court below can be supported in disregarding altogether the mortgage contract between the parties; for it does not follow that because there was an error in the mortgage, in charging interest on the whole amount of the shares instead of the amount actually paid, therefore the contract was outside of the provisions of its charter. The mortgage would in any event be valid to the extent of its conformity with the charter, and the Court could modify it so as to conform thereto. *Mosley vs. Baker*, 6 *Hare*, 87 ; *Shannon vs. How. Mut. Build. Asso.*, 36 *Md.*, 383.

*Luther M. Reynolds* and *I. Nevett Steele*, for the appellee.

The contract of loan in this case was usurious. On this point it is well to compare the workings of the charter of this society with those authorized by the general laws, contained in the Code, and Acts of Assembly prior to the Code. The Homestead or Building Associations were limited in their duration. This society is perpetual. Those were limited in the number of shares to one thousand. This can have one hundred thousand, provided it has but one thousand at a time.

Those associations were authorized (vide Code, Art. 26, sec. 35,) in anticipation of the time, *not when the shares would be entirely paid up,* but "when the corporation might cease to exist, according to the plan contained in the articles of the association ; to advance to the shareholder, for such premium as might be agreed upon," *not the par value of the share,* "but the sum which the holder would be entitled to receive for his shares at the dissolution of the corporation." In those associations the share advanced upon was not cancelled and a new one issued in its place, nor did the holder cease to be a stockholder or a voter at the meetings of the association.

The provisions of the law do not prescribe the "plan" by which the association should "cease to exist." That

plan, however, is clearly laid down; in fact, the practical working of all those associations is illustrated in the mortgage of *Robertson to the American Homestead Association*, (*vide* 10 *Md.*, 397.) In that mortgage we discover the plan common to all the associations; which was, that the association should cease to exist when there was money enough in the association to pay the holders of the stock, not advanced on, the par value of the shares. This contingency might happen after the par value of the shares had been entirely paid up, or it might happen before. It might happen before the borrowing member had repaid (in his weekly dues,) the amount borrowed, or it might happen afterwards; if before, the hire of his money was less than six per cent.; if afterwards, it was more than six per cent. None of the mortgages were made to secure a return of the money advanced, but all were made to secure the payment of the weekly instalments until the association should cease to exist, according to the aforesaid plan. The longevity, so to speak, of those associations depending on the rapidity with which they advanced upon the shares, it follows, the greater the premiums paid by the members obtaining the advances, the more rapidly the shares would all be advanced upon,—the sooner the association would cease to exist, and the less, in reality, the member obtaining the advance would have to pay for the hire of the money. It follows, that a borrowing member participates in the profits to the association derived from the premiums. In all these particulars this permanent association differs from the old Homestead or Building Associations.

The Act of the Legislature incorporating this society was at the time obnoxious to the Constitution of 1864, then in force, if it intended to authorize the society to receive more than six per cent. To that extent the Act is unconstitutional.

MILLER, J., delivered the opinion of the Court.

*Robertson's Case*, 10 *Md.*, 397, decides that mortgages to Building Associations, such as are contemplated and provided for by the Act of 1852, ch. 148, if executed in conformity to the provisions of that Act, are free from objection on the ground of usury. That was a general law authorizing the formation of such associations, and its provisions were embodied in the Code, Art. 26, secs. 30 to 39. This case does not require us to notice the changes in this law made by the general corporation Act of 1868, ch. 471. The appellant derives its existence from the special Act of incorporation of 1867, ch. 358. It may be assumed *argumenti gratia*, that this latter Act, in respect to the question before us, is similar to the Act of 1852, and the provisions of the Code, and, upon this assumption, the point for us to decide is, whether the mortgage in this case is usurious, and that must be determined by the further question, whether it is a mortgage authorized by and in conformity with the Act incorporating the appellant. The mortgage recites that the "mortgagor being a member of said body corporate, has received therefrom an advanced loan of $3600 on nine shares of its stock held by him in his own name," and conveys to the mortgagee the described property, with the proviso, that if the mortgagor "shall make the payments and perform the covenants herein on his part contained, then this mortgage shall be void." Then follows among others, the covenant that the mortgagor, "in consideration of the use, benefit and advantages derived to him through the mortgagee's consent to accept repayment of said loan in said fractional proportions, extending through a period of ten years, in accordance with the table of rates," will pay "the weekly sum of eleven dollars and sixteen cents for 520 weeks, computing from the 10th of October, 1867, and ending on the 10th of October, 1877, the loan being repayable in ten years, by payment of the weekly dues upon nine shares,

*with weekly interest, at the rate of six per cent. per annum upon the par value of said nine shares.''* The proof shows the mortgagor received only $2700, and that the par value of the shares was $400 each, making for the nine $3600. One of the essential stipulations of the mortgage is, that he shall for ten years, pay weekly interest on the par value of these shares, that is, upon $3600, being upon $900 in excess of the sum he actually received from the mortgagee. The Act of 1867, in its 6th section, permits the mortgage to stipulate for the payment of weekly instalments on the shares redeemed or sold, *" together with interest on the sum so paid or advanced.''* These latter terms clearly mean interest on the sum actually received by the mortgagor from the society, and not on the par value of the shares on which the advance was made. This is the construction we have placed upon the equivalent terms " amount borrowed.'' *Oak Cottage Building Association vs. Eastman & Rogers,* 31 *Md.,* 561. In this stipulation, most important as respects the question of usury, the mortgage fails to conform to the provisions of the law under which protection is claimed for it against the charge of usury. It must, therefore, be regarded in the same light as if it were a mortgage between individuals, and apart from any law relating to Building Associations. So considered, it is plainly usurious and was rightly so treated by the Court below. We rest our decision upon this ground, as it is quite sufficient to dispose of the case, and shall express no opinion upon other questions raised in argument, and in the Court below.

*Order affirmed, and*
*cause remanded.*

(Decided 11th February, 1875.)