MARY J. BIRMINGHAM and ANDREW BIRMINGHAM *vs.*
THE MARYLAND LAND AND PERMANENT HOMESTEAD
ASSOCIATION OF BALTIMORE COUNTY.

*Mortgage—Usury—Construction of the Act of* 1868, *ch.* 427,
*creating a Corporation, with the privilege of Lending money
and Charging a Premium or bonus therefor—Section* 57 *of
Article* 3 *of the State Constitution.*

By the Act of 1868, ch. 427, certain individuals and their successors were
incorporated, and the purpose of the association was declared to be "the
purchase, improvement, sale and leasing of land, the borrowing of money,
and the loaning of money to its members and others upon collateral securi-
ties, or upon mortgage of real or leasehold property," &c. And by the 8th
section, it was provided: "That it shall and may be lawful for the said
association to loan money upon such interest as may be prescribed by law,
for any period of time, and upon such *premiums or bonus as may be agreed
upon by the association and the borrower,* and in *all cases* to deduct the in-
terest and bonus, or either of them, in advance." B. and his wife borrowed
from the association thus formed $1000.00 and the bonus agreed upon was
$250.00. Instead of deducting this bonus in advance and giving the bor-
rowers $750.00, it was added to the $1000.00, and a note and mortgage
given for $1250.00, by the terms of which the borrowers stipulated to pay
to the association this sum of $1250.00 "in monthly instalments of ten
dollars and forty-one and two-thirds cents each, with an additional monthly
instalment of six dollars and twenty-five cents as interest and bonus, *both
said instalments* to be due and payable on the first Thursday of each and
every month, commencing on the first Thursday of June, 1873, and *each to
continue* for one hundred and twenty consecutive months." The mortgage
further provided that in case of default in payment of these monthly instal-
ments, or either of them, the mortgagors should pay "a fine of three dollars
twelve and a half cents for the first month's default, and the sum of six
dollars and twenty-five cents for each subsequent monthly default until the
same shall be paid." The mortgagors being in default, the mortgagee
obtained a decree for a sale of the mortgaged premises. The mortgagee
filed a statement showing the amount which it claimed to be due. From an
order directing this amount to be brought into Court to be paid to the mort-
gagee, the mortgagors appealed. HELD:

Birmingham *vs.* Md. Land & Perm. Homestead Asso. of Balt. Co.

1st. That the privilege granted by said charter was a very unusual and extraordinary one, and no contract should be brought within its operation unless made and executed in strict conformity with the very terms of the law.

2nd. That it was to be construed as protecting a contract of loan upon a bonus agreed upon, only where the bonus was actually deducted in advance.

3rd. That there was nothing in the 8th section, or in any other part of the charter of said association, which sanctioned or made the contract in this case lawful.

4th. That the mortgagors were liable only for the true amount due on the mortgage, excluding all excessive interest exacted or paid in the shape of bonus or otherwise.

Whether under the provisions of the Constitution of this State, and especially the 57th section of the 3rd Article, it is competent for the Legislature by a special law to confer upon a corporation like this the peculiar privilege of exacting usury upon loans of money, *Quære?*

APPEAL from the Circuit Court of Baltimore City.

The appellants made a mortgage to the appellee, to secure the repayment of a loan. Default being made, a decree was passed for the sale of the mortgaged premises. The mortgagee afterwards filed a statement of its mortgage claim which was contested by the mortgagors. The Court below (PINKNEY, J.,) passed an order directing that unless the amount claimed to be due to the mortgagee as shown by its statement, was brought into Court by the mortgagors within a time specified; to be paid to the mortgagee, the trustee should proceed to make sale of the mortgaged property upon the terms and in the manner as in the decree set forth. From this order the mortgagors appealed. The case is further stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STEWART, BOWIE, GRASON, MILLER, ALVEY and ROBINSON, J.

*Luther M. Reynolds,* for the appellants.

*L. P. D. Newman* and *B. C. Barroll,* for the appellee.

MILLER, J., delivered the opinion of the Court.

The question arising in this case is, whether the amount due on the mortgage from the appellants to the appellee, is correctly ascertained by the order appealed from, or whether the usury in the shape of a bonus of $250, and other excessive interest, stipulated for by the contract between the parties, should be eliminated therefrom?

The appellee insists, that the exaction of this bonus is legalized and made valid by the provisions of its charter, the Act of 1868, ch. 427. By this Act certain named individuals and their successors are incorporated under the name of "The Maryland Land and Permanent Homestead Association of Baltimore County," and the purpose of the association is declared to be, "the purchase, improvement, sale and leasing of land, the borrowing of money, and the loaning of money to its members and others upon collateral securities, or upon mortgage of real or leasehold property, and to insure the lives of its members and debtors for the benefit of the association, whereby the security advanced upon may be in case of death secured to the family of the deceased." And by the eighth section it is provided "that it shall and may be lawful for the said association to loan money upon such interest as may be prescribed by law, for any period of time, and upon such *premiums or bonus as may be agreed upon by the association and the borrower*, and in *all cases* to deduct the interest and bonus, or either of them, in advance." It is a very grave question whether, under the provisions of the Constitution of this State, and especially the fifty-seventh section of the third Article, it is competent for the Legislature, by a special law, to confer upon a corporation like this the peculiar privilege of exacting usury upon loans of money. But we do not find it necessary now to decide that important question, because assuming the eighth section of this Act to be constitutional and valid, we are of opinion, the contract in this case is

not within its terms, and consequently not protected by it. The privilege thus granted is a very unusual and extraordinary one, and no contract should be brought within its operation unless made and executed in strict conformity with the very terms of the law. Clearly no latitude or liberality of construction should be indulged in, in order to extend the operation and effect of such a provision, but on the contrary, its extraordinary character, granting as it does to a strictly private corporation, an exclusive privilege of great value, not conferred upon other corporations or the citizens of the State generally, justly subjects it to a rigid and strict construction. In view of these considerations, it would seem to be not unreasonable to construe it as protecting a contract of loan upon a bonus agreed upon, only where the bonus is actually deducted in advance, or, in other words, as making such a contract lawful, *provided* the bonus is thus deducted and as having no further operation whatever. But, however this may be, we certainly find nothing in this section, that, upon any reasonable construction of it, authorizes or makes lawful a contract like that entered into in the present case. This leads us to consider the terms and conditions of that contract. It appears the appellants borrowed from the appellee $1000, and the bonus agreed on was $250. Instead of deducting this bonus in advance, and giving the borrowers $750, it was added to the $1000, and a note and mortgage given for $1250, by the terms of which the appellants stipulated to pay to the appellee this sum of $1250, "in monthly instalments of ten dollars forty-one and two-thirds cents each, with an additional monthly instalment of six dollars and twenty-five cents as interest and bonus, *both said instalments* to be due and payable on the first Thursday of each and every month, commencing on the first Thursday in June, 1873, and *each to continue* for one hundred and twenty consecutive months." A simple calculation shows that these terms required the borrowers to pay in principal

and interest the sum of $2000, making $400 in excess of the $1000 which they actually received from the lender, and legal interest thereon for the ten years, and this excess of $400 includes *one hundred and fifty dollars of excessive interest,* over and above the $250 bonus. The mortgage provides, moreover, that in case of default in payment of these monthly instalments, or either of them, the mortgagors shall pay "a fine of three dollars twelve and a half cents for the first month's default, and the sum of six dollars and twenty-five cents for each subsequent monthly default, until the same shall be paid." Such being the character and effect of this contract, we repeat, it appears to us very plain that there is nothing in the section referred to, or in any other part of the appellee's charter, which sanctions it, or makes it lawful. It is a contract altogether outside of the provisions of that Act, and must therefore be treated as a contract between individuals, liable to have usury deducted from it, when that objection is made, as it has been in this case, at the proper time and by the proper parties. *Balt. Permanent Building & Land Society vs. Taylor,* 41 *Md.,* 409. It is proper to remark, in conclusion, that the appellee is not a Building Association, nor is this mortgage executed in conformity with the law regulating such associations, so as, for that reason, to be free from the objection of usury; nor does it appear, (even if that would make any difference,) that the mortgagors were members of the association created by this charter, or subscribers to its stock.

The order appealed from must therefore be reversed, and the cause remanded, in order that an account may be stated ascertaining the true amount due on the mortgage, excluding all excessive interest exacted or paid in the shape of bonus or otherwise.

*Order reversed, and*
*cause remanded.*

(Decided 9th February, 1877.)