ISAAC H. WHITE *vs.* JAY WILLAMS, ASSIGNEE OF THE BALTIMORE BUILDING AND LOAN ASSOCIATION OF BALTIMORE.

*Building Associations—Premium on Loans—Usury—Appeal—Exception to Auditor's Account.*

Code, Art. 23, sec. 98, authorized building associations to make advances to members " for such premium as may be agreed upon ; " the sum advanced to be secured by a mortgage bearing interest at the rate of six per cent. The mortgage in this case to a building association to secure a loan of fifteen hundred dollars to a member, provided for the payment of interest at six per cent together with the payment of the monthly dues on the borrower's shares of stock and also a premium of $7.50 monthly during the continuance of the mortgage. *Held*,

1st. That the premium authorized to be charged by building associations is a sum of money to be paid for the loan in advance and that the stipulation providing for the payment of the monthly sum called

premium, in addition to the legal rate of interest during the continuance of the mortgage is not authorized by the statute but is usurious.

2nd. That since the Act of 1894, ch. 321, providing that building associations, "instead of receiving the whole amount of the premium for the loan in advance or deducting the whole amount of said premium," may contract with the borrower to pay the same in instalments, was passed after the execution of the mortgage in this case, the borrower's rights are not affected by that statute.

Upon appeal from an order ratifying an auditor's account, no objections thereto will be considered, unless contained in the exceptions filed below.

Appeal from an order of the Circuit Court for Wicomico County (PAGE, C. J.) overruling exceptions to an auditor's report and finally ratifying the same.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, SCHMUCKER and JONES, JJ.

*E. Stanley Toadvin* (with whom was *G. W. Bell* on the brief), for the appellant.

*Fielder C. Slingluff* and *Jay Williams*, for the appellee.

JONES, J., delivered the opinion of the Court.

This case is brought to this Court upon an appeal from an order passed by the Court below ratifying an auditor's account.

The facts of the case which preceded this order and gave rise to the controversy decided thereby, are as follows: On the 11th day of March, 1893, the appellant, together with his wife, executed to the Baltimore Building and Loan Association of Baltimore, a body corporate, a bond in the sum of fifteen hundred dollars, which, after stating that it was for money borrowed from the said corporation on fifteen shares of its stock and that it was secured by a deed of trust of even date, is conditioned to well and truly pay the monthly interest on the said sum of fifteen hundred dollars at the rate of six per cent per annum from the date

of the bond, the monthly dues on the said shares of stock, the monthly premiums on the said shares, all fines assessed against the appellant under the rules and regulations of the corporation, all taxes and assessments upon the real estate covered by the deed of trust, all premiums of insurance necessary to keep the property insured, and all fees, costs and expenses to which the said corporation might become liable by reason of any litigation touching the transaction with the appellant as " a member of and borrower from " the same, " until the said stock shall become fully paid in, and of the par value of one hundred dollars per share and shall then surrender the said stock " to the corporation. The bond then provided that if the " obligation be discharged before the said stock reaches the par value of $100 per share as aforesaid, whether by voluntary payment, by consent of parties or by enforcement of the deed of trust securing it, or otherwise, the same shall be credited with the value of said fifteen shares of stock to be determined by the board of directors of said association according to the rules of valuations laid down in the by-laws or by resolution of the board of directors and as of the date of such payment." On the same day the appellant and his wife executed to the said corporation a mortgage which recites, " Whereas, the said mortgagor, Isaac H. White, being a member of the said body corporate, has received an advance or loan to the amount of fifteen hundred dollars on fifteen shares of its stock, held by the said Isaac H. White in his own name, the said sum of fifteen hundred dollars being the par value of said fifteen shares, and upon which the mortgagors hereby agree to pay during the continuance of this mortgage a premium of seven dollars and fifty cents on the last Saturday of each and every month, the interest on the said loan on the last Saturday of each and every month at the rate of six per cent. per annum ; and the dues of nine dollars on the last Saturday of each and every month ; and also such fines and penalties as may be imposed upon him by the by-laws, in accordance with the stipulations hereinafter mentioned."

The condition of the mortgage is that the mortgagors
" shall make the payments and perform the covenants herein
on each of their part to be performed, until the said stock
becomes fully matured and of the value of one hundred
dollars ($100) per share."

The mortgagors having made default in the payments
stipulated for in the bond and mortgage, the same were as-
signed by the corporation to the appellee here for col-
lection, and the mortgaged property was sold by him under
a power of sale contained in the mortgage, and the pro-
ceeds of sale were distributed by the assignee by a state-
ment filed with his report of sale in accordance with the
claim of the appellee as to the amount to which he is en-
titled in settlement of the mortgage claim.

Upon objections to this proposed distribution of the fund
by the appellant, the case was referred to an auditor, who
stated four several accounts after hearing evidence sub-
mitted by the respective parties.   In account No. 1, he
treated the transaction between the parties thereto as an
ordinary loan.   In account No. 2, he allowed the appellee
the amount of the advance to the appellant with interest
thereon to day of sale, and credited appellant with the value
of his stock as made to appear from evidence before him
and with the amount of interest paid by appellant; and in
addition allowed him for amount paid as premium with
average interest on same.   In account No. 3, after allow-
ing for expenses and commissions as in other accounts, he
allowed to appellee the amount found in the evidence to
be necessary to mature the appellant's stock.   In account
No. 4, after charging appellee with amount of sales and
allowing for expenses, etc., he allowed his claim as origin-
ally made, less a small amount overpaid for insurance.   As
shown by a statement filed with the auditor, the result in
this account is arrived at by charging the appellant with
the amount of the original loan, interest for nine and a half
months, being for time intervening between the last pay-
ment by him of dues, interest and premium, as provided in

the mortgage, and the day of sale, with amount denomi-
nated in the mortgage as premium for the same time, and
with small amounts for fines and insurance and with a re-
lease fee ; and allowing him as a credit the amount actually
paid in by him for dues, and average interest thereon.

To account No. 4, appellant excepted " because the
amount allowed in said audit to the assignee of said mort-
gage is largely in excess of the amount due thereon ;" "and
for that the amount so allowed in audit No. 4, to said as-
signee, is usurious."

The appellee excepted to accounts Nos. 1, 2 and 3. The
Court ratified account No. 4, and rejected Nos. 1, 2 and 3.

The single specific ground of objection by the appellant
to account No. 4 of the auditor, is that the amount allowed
thereby to the appellee consists in part of usurious charges,
and it is therefore the only objection this Court can notice
in giving consideration to the order appealed from. *Darby*
v. *Rouse*, 75 Md. 26 ; *Miller's Equity Proc.*, sec. 545 and
note 1, and cases there cited.

The charter of the Baltimore Building and Loan Asso-
ciation is not before us, but the case has been argued upon
the briefs and at the oral argument upon the *concessum* that
in the language of appellant's brief, it is " a mutual asso-
ciation based on a mutual plan." In other words, it is of
the class of corporations familiarly known as building asso-
ciations, and classified in our general incorporation Act
under the head of " Building or Homestead Associations,"
with their powers and privileges defined in sections 95 to
99 inclusive, of Article 23 of our Code ; and it will be seen
from the provisions of the bond and mortgage herein set
out, that the transaction in question was intended to be one
that would come within the powers therein conferred upon
such corporations.

The charge of usury is aimed at the exaction made in the
contract between the loan association and the appellant of
seven dollars and a-half per month under the designation
of premium, in addition to the legal rate of six per cent

interest; and the question is, whether this is an authorized charge.

The mortgage, which gives rise to the question here, was made prior to the Act of 1894, chap. 321, and is not affected by that Act, which, if it could have any such effect upon transactions such as this, which antedated its enactment, does not purport either expressly or by implication to have any retroactive effect.    It was decided in *Geiger* v. *Eighth Ger. B. Assoc.*, 58 Md. 574, that the Act of 1872, chap. 178, now sec. 103 of Art. 23 of our Code, has no application to corporations of the kind with which we are here dealing.    The right of the corporation to exact this charge of premium, here the subject of objection by the appellant, is therefore to be looked for in sections 94 to 99 of Art. 23 of the Code, already referred to, if such power is possessed by it.    Such a charge clearly does not come within the description of " bonus " which is authorized by section 97 of this Article—and if authority for making it is to be found at all in any of the sections of the Code referred to, it must be in section 98, which reads as follows : "Such corporation, at any time in advance of the period of time at which it may cease to exist, according to the plan contained in the original articles of association, may advance to any member thereof, for such premium as may be agreed upon, the sum which he would be entitled to receive upon the dissolution of the corporation, for any number of shares therein held ; or may purchase from any member thereof the share, or any number of shares of the stock held by him, at such price or sum as, according to the articles of association, such member may agree to receive, and on payment of said sum of money, may receive from such member security as mentioned in the next succeeding section of this article, for the payment by such member to such corporation, of the unpaid instalments to be paid on the share or shares of stock so sold or redeemed, together with interest at the rate of six per cent per annum on the sum so paid or advanced at such times and subject to such fines and penalties for the non-

payment thereof, as may be prescribed in the articles of association or in the by-laws."

Now, the word premium, as used in this section, would seem to mean a sum of money to be paid for the loan in advance and rendered fixed and definite by agreement of the parties. It is true the word premium in itself may mean either a fixed sum to be paid or a percentage. Webster's Dictionary gives as one definition of the word : "something offered or given for the loan of money : sometimes synonymous with interest but generally signifying a sum in advance of the capital or sum lent." To the ordinary apprehension this would be the meaning. The statute does not indicate that the word is there used in a sense different from its more ordinary and commonly accepted meaning. On the contrary, when it goes on, as in the section quoted, to authorize security to be taken, from the member of the corporation obtaining an advance for the payment by such member of the unpaid instalments to be paid on the share or shares of stock sold or redeemed, together with interest at the rate of six per cent per annum on the sum paid or advanced and subject to such fines and penalties for non-payment, as may be prescribed in the articles of association or in the by-laws, and again in the following section, where it prescribes the kind of security to be taken, particularizes for what purposes security is to be taken, from which all reference to premium is excluded, it seems obvious that in contemplation of the statute the premium was something to be ascertained and settled in advance, and needed therefore no provision for requiring security for its subsequent payment. This is made clear by the enactment of chapter 321, Act of 1894, in which it is provided in express terms that building associations "instead of receiving *the whole amount* of said premium in advance or deducting *the whole amount* of said premium" from the advance made to a member, may contract with the borrower to pay the same in weekly, monthly or such other instalments as may be agreed upon; and may receive such

security for payment thereof as is provided for the dues and interest. For why should this power of receiving the premium in instalments instead of taking " *the whole amount* in advance " be conferred anew upon these associations if such power was already possessed. The language employed is also significant. The expression, "instead of receiving the whole amount of said premium in advance or deducting the whole amount," contains a plain implication of the legislative understanding that this power of receiving or deducting the whole amount in advance was the only one then possessed in respect to charging or receiving the premium. If this be the true construction of our statute as respects the right and power of building associations when making advances of money to charge and receive payment of premiums, as seems clear, it follows that the charge of the appellee in this case of seven dollars and fifty cents per month in addition to the charge of the legal rate of interest cannot be sustained as premium. If not premium, what is it? It is simply something to be paid for the advance or loan of money made to the appellant by the assignor, building association, in excess of the legal rate of interest, which is usury. This was so decided in the case of *Geiger* v. *The Eighth Ger. Building Association,* 58 Md. *supra.* In that case the mortgage, after reciting that the appellant was a member of the association and had received an advance of $400 on his two shares of stock, which were redeemed and transferred to the association, contained a covenant on his part to pay weekly the sum of one dollar as dues and also weekly the sum of sixty cents as weekly premium until dissolution of the corporation. This Court held that the corporation in that case was a Mutual Loan Association, as the corporation involved in this case is conceded to be, and that it had the right to receive the dues and legal interest on the amount advanced; but that the sum required to be paid as premium was more than the legal rate of interest and that the excess was usury and it was not allowed as premium, the Court saying at page 573 : "The thirty cents premium per share, provided

for in Article 8 of appellee's constitution and charged this appellant, is more than six per cent on the value of the share, which is $200.00. Sixty cents is charged the appellant on the two shares ($400.00) advanced him. This is nearly fourteen cents per week in excess of legal interest. It is not called interest but is called premium ; but it is manifestly intended for interest and is an evasion of and in violation of law." Now if in this case the two charges, the one for interest and the other for premium had been put together and charged in one monthly sum of $15 under the name of premium, the parallel between this case and the *Geiger's case* would be perfect. It can make no manner of difference in principle that the authorized part of the charge, namely the interest, is separated from the unauthorized charge namely, the excess, and one is called interest and the other is called premium, which is the only difference in effect between this case and in the case in 58 Md. *supra.* In the case of *Birmingham* v. *The Md. Land and Permanent Homestead Asso.*, 45 Md. 541, this Court, while construing, it is true, the charter of a different kind of loan association from the one with which we are dealing, and one operating under a special charter, declared a principle of construction that may well be applied to corporations of the character of the one here, in so far as they may be endowed with special powers and privileges, when in speaking of the right granted to the particular corporation in that case to charge premium or bonus it is said at page 544 : "The privilege thus granted is a very unusual and extraordinary one, and no contract should be brought within its operation unless made and executed in strict conformity with the very terms of the law." And in that case it was held that the bonus or premium authorized was a sum to be deducted in advance under a provision in the charter of the corporation which read "that it shall and may be lawful for the said association to loan money upon such interest as may be prescribed by law, for any period of time, and upon such premiums or bonus as may be agreed upon by the association and the borrower,

and in all cases to deduct the interest and bonus, or either of them in advance."

The foregoing view of the question here being considered is in accord with the trend of the authorities generally. In *Endlich on Building Associations*, section 407, it is said: "The statutes authorizing the reservation of premiums have, in general, been understood to mean a definite sum for the whole period of the loan, and not anything whatever that the parties, in their contract, may choose to denominate a bonus or premium." And again in section 408, after saying it had been stated that in some associations the rule was not to deduct the premium, &c., but to require it to be paid in monthly instalments, it is said: "All that can be said of it, under the authority of the cases just examined, is that such an arrangement, if in conflict with the method prescribed by statute in the legalization of premiums, or perhaps in the absence of distinctive legislative sanction, must be regarded as illegal, and as rendering the entire transaction usurious." Among the authorities to which the author refers in support of the proposition contained in the last section is the case of *Geiger* v. *The Eighth Ger. Bdg. Asso.*, 58 Md. *supra*. In *Thompson on Building Associations*, at page 104 it is said: "The legislative intention in allowing premiums was to confer on the association an equitable and profitable method of selecting its borrowers by requiring of them a bonus. So if the association disregards this intention and by any form increases the interest, the Courts promptly restrain any such practice, and compel it to refund any such overcharges."

It is quite unnecessary to review at length the authorities so fully quoted in the brief of the appellee. They do not go to the distinctive question we have to deal with here and if they did, the rule which must control this Court must be derived from our own statutes and the construction put upon them by our own Courts. The case cited from the Supreme Court of Indiana and so much relied upon by the appellee's counsel, dealt with and construed legislation

upon this subject different from our own, and which goes much further than ours in its grant of powers to building associations to regulate the charge of, and method of paying premiums upon loans.

It follows from the foregoing views that the objection of the appellant to the account No. 4, herein referred to, ought to have been sustained and that the order of the Court ratifying the same must be reversed.

*Order reversed, and cause remanded.*

(Decided March 21st, 1900).