# REPORTS OF CASES

ADJUDGED IN

# THE COURT OF APPEALS

OF THE

## DISTRICT OF COLUMBIA.

---

## THE MIDDLE STATES LOAN, BUILDING AND CONSTRUCTION COMPANY

*v.*

## BAKER.

---

CONFLICT OF LAWS; BUILDING ASSOCIATIONS; ACCOUNTING; USURY; ASSUMPTION OF MORTGAGE DEBT.

1. Where a Maryland building association made a loan secured by mortgage on land in this District, and it was expressly stipulated by the parties that the loan was made with reference to the law of Maryland, and the result of an accounting here between the parties was found to be the same under our law as under the law of that State, the rule adopted there was followed, with the statement, however, by this court that in so doing it was not to be understood that the court acquiesced without reservation in the theory that all of the incidents of mortgage in this District can be made referable at the will of the parties to the laws of other States, and that the court is always to be governed by such laws in their construction.

2. A provision in a building association mortgage that the borrower, instead of paying the usual premium — which is a sum of money to be paid for the loan in advance — is to pay monthly, during the

continuance of the mortgage, a specified sum called premium, in addition to the legal rate of interest, is void as calling for usurious payments, and in an accounting payments so made should be charged as payments on account of the principal debt.

3. Where, in such a case, it is provided that of the so-called premium of sixty cents a month, ten cents is to be carried to the operating expense account of the company, the borrower is nevertheless, in the accounting, entitled to credit for the entire sixty cents a month paid by him, and not only to fifty cents. There can be no abatement of the usury from sixty to fifty cents a month, because the company chooses to apply ten cents of it to its operating expenses.

4. Where, a member of a building association, who has borrowed money from the association upon a mortgage providing that he shall continue to pay certain sums until the stock representing the mortgage shall be fully paid up, conveys the mortgaged land to a third person, who is thereupon recognized and admitted into membership by the company, such grantee, whether he has by the terms of the deed to himself agreed to assume the mortgage debt or not, is entitled to credit for usurious payments made by his grantor.

No. 1103.   Submitted October 10, 1901.   Decided November 6, 1901.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia overruling exceptions to and confirming a report of the auditor in a suit in equity against a building association for an accounting, a release of certain mortgages, and the cancellation of certain stock.                                        *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity for an accounting under two mortgages, instituted in the Supreme Court of the District by the appellee, Ira J. Baker, as complainant, who is the owner of the land subject to the mortgages, against the appellant, The Middle States Loan, Building and Construction Company, a body corporate, organized under the laws of the State of Maryland, having its principal office at Hagerstown, in said State, but having an office also and doing business in the District of Columbia, which business seems to be that of lending money as a building association.

The appellee was not the maker of the mortgages in question, but a grantee by *mesne* conveyances from the two several persons who did make them; and the mortgages are for two several pieces of property, adjacent to each other in the suburban village of Langdon, in this District.   One mortgage is upon lot 5, in block numbered 21, in Langdon Park, and the other is upon parts of lots 9 and 10, in square numbered 22, in Langdon Park.

On September 22, 1893, one Elizabeth A. Irey, being then the owner of the first-mentioned lot, conveyed it by a deed of mortgage to the appellant company to secure the payment of the sum of $1,400, for which at the same time she executed and delivered to the company her bond, the substance of which was incorporated into the deed of mortgage.   The condition of the bond was in the following terms:

" Now the condition of the above obligation is such that if the said Elizabeth A. Irey shall pay the interest monthly on said sum of $1,400 received by her as aforesaid, and shall make the monthly payments monthly on twenty-eight shares of stock of said company subscribed for by her in said company, fourteen of such shares being premium shares required to be taken for the loan instead of the usual premium, and any and all fines assessed against her or any of said shares of stock, and shall likewise pay, when due, the taxes assessed against the property mortgaged to secure the repayment of said loan of $1,400 and the premiums necessary to keep the buildings on said mortgaged property insured from loss by fire, in such sum as the said company may require, not exceeding $3,000, until the said stock subscribed by her as aforesaid becomes fully paid in and of the value of $100 per share, then it is understood that upon the surrender of said stock to said company this obligation shall be deemed fully paid and canceled.   But if she fail to pay when due and payable the said taxes and insurance premiums, or make default in the payment of said monthly interest, fines, and monthly payments on said stock for a period of six months after the same are or any installment thereof is due, then, at the option of said company, the whole indebtedness evidenced

by this obligation, including any taxes and insurance premiums due or paid by said company, shall at once become and be due and collectible, and a foreclosure of said mortgage in the manner therein provided may be had; but if the money due upon this bond is paid or collected by the company by suit or foreclosure before the said stock subscribed for shall have matured as aforesaid, then such rebate, if any, from payment on the premium shares of stock will be allowed as the board of directors of this company shall, in their discretion, deem equitable."

Under the terms and conditions of this bond and the constitution and by-laws of the company, the monthly interest on the loan was seven dollars ($7), the monthly dues on fourteen shares of said stock amounted to eight dollars and forty cents ($8.40), and the monthly premiums on the other fourteen shares amounted to the like sum of eight dollars and forty cents ($8.40).

Mrs. Irey paid the interest, dues, and premiums, as specified, for thirty-six months from and after the date of the execution of the bond and mortgage; and then, on November 30, 1896, conveyed the mortgaged premises to one Anna May Wood, reciting in the deed that the property was conveyed subject to an indebtedness of about $760 due to the appellant company, which indebtedness the grantee Wood assumed by the deed to pay.

The grantee Anna May Wood made twelve monthly payments of interest, dues, and premiums; and then, by deed dated April 14, 1898, conveyed the property to one Wilmina Flickinger, reciting in the deed of conveyance that it was subject to an indebtedness of about $760 due to the appellant company. There was no mention in the deed of any assumption of the indebtedness by Wilmina Flickinger. This grantee during the time of her holding made no payment of interest, dues, or premiums. On August 3, 1898, Wilmina Flickinger conveyed the property to the appellee, Ira J. Baker, for the consideration, as stated, of $150 and other valuable considerations, subject to an incumbrance in favor of the appellant company, which the appellee Baker

assumed and agreed to pay. The appellee continued to pay interest, dues, and premiums to the company for twenty-eight months.

There was paid in the aggregate by all the parties the sum of $532 as interest, $638.40 for dues, and $638.40 for premiums — or in all, the sum of $1,808.80.

The owner of the other piece of property involved in the suit, was, on November 28, 1893, one Wiley R. Cook, who on that day borrowed from the appellant company the sum of $1,000, and executed his bond and mortgage therefor, identical in every respect with the bond and mortgage given by Mrs. Irey, except as to the date and the number of shares of stock of the company subscribed for, the number of such shares being twenty. The monthly interest which he was to pay was five dollars ($5.), the monthly dues on ten shares of stock amounted to six dollars ($6), and the monthly premiums on ten other shares of stock to six dollars ($6).

Cook paid the interest, dues, and premiums, in accordance with his agreement, for eighteen months; and then, by deed dated May 2, 1895, conveyed the mortgaged property to the appellee Baker. The consideration stated in the deed was only a nominal consideration of ten dollars; and the deed is silent as to the mortgage. Thereafter the appellee continued to pay the interest, dues, and premiums for sixty months.

The aggregate of payments on this second mortgage for the whole period was the sum of $380 for interest, $468 for dues, and $468 for premiums — in all, $1,316.

Omitting consideration of the interest, the aggregate of dues and premiums paid under the Irey loan was $1,276.80. and under the Cook loan $936.

The by-laws of the company provided that loans should be made upon the applicant's becoming a member of the company and subscribing for the number of shares which at maturity would equal twice the amount of the loan; that one-half of the shares subscribed for should be regarded as a premium bid for the money borrowed instead of the money

premium as required in the plans of other associations of the same kind; that in the repayment of the loan before the maturity of the stock this one-half of the shares should be regarded as having been subscribed for and accepted as a premium for the loan; that the borrowing member should pay interest on the loan at the rate of six per centum per annum, in monthly installments, in advance; that similarly in monthly installments, in advance, he should pay the dues on each and all of the shares of the stock, which dues amounted to sixty cents a month on each share of stock, payable on the last Saturday of each month, with reference to which it was provided that fifty cents per month should be paid into what was called the loan fund of the company, and ten cents per month should be applied to defray the operating expenses, of which any unexpended balance should be credited to the loan fund as profit; and finally, that on all installment stock on which advances are made as loans, on which the number of payments is limited to ninety-six months, all payments of dues and premiums shall cease at the end of ninety-six months, and the payment of interest only, at the rate of six per centum per annum, payable monthly, shall continue until the stock matures. It appears also that what is called an admission fee, amounting to one dollar for each share of stock subscribed for, was required to be paid by each applicant for a loan, and that Mrs. Irey had paid on this account $28 and Cook $20.

About December 16, 1899, the appellee Baker, assuming that the payments made had satisfied the loans, and therefore that the mortgages should be discharged, applied to the appellant company for releases of them. These the company declined to execute except upon condition of the payment of $742.92 on account of the Irey mortgage, and of $480.17 on account of the Cook mortgage, which several sums it claimed to be yet due thereon according to the con-. tracts of the parties. Thereupon the appellee filed the present bill for an accounting, for a release of the mortgages, and the cancellation of the stock. The appellant, as defendant, denied his right to the relief sought, and claimed

the sums just mentioned as being yet due to it. The cause was referred to the auditor of the court for the statement of an account; and upon such reference that officer found that, upon the Irey mortgage, there was yet due to the company the sum of $19.70, and that upon the Cook mortgage the company had been overpaid to the amount of $33.87 — whereby there was a net balance of $14.17 left due to the complainant, as an overpayment made by him.

Inasmuch as both mortgages contained an express stipulation that the loans were made with reference to the laws of Maryland, where the same were made payable, the auditor in the statement of his account announced that he followed the rule laid down for the purpose by the Court of Appeals of that State in certain cases, to which he referred, in one of which the appellant here was a party and had been sued upon a precisely similar transaction to that here in controversy.

Exceptions were filed to the auditor's report by the defendant company, but they were all overruled, and the report was ratified and confirmed. Thereupon it was decreed that the defendant company should execute and deliver to the complainant releases in due form of the two mortgages; and that the complainant should recover from the defendant company the sum of $14.17, shown by the report to be due from the company to the complainant, together with the costs of suit, for which execution as at law was awarded.

From this decree the defendant company has appealed.

*Mr. Benjamin F. Minor* and *Mr. Joseph F. Collins* for the appellant.

*Messrs. Millan & Smith* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In pursuance of the express stipulation of the parties that the loans in this case were made with reference to the laws

of the State of Maryland, the auditor purported to state his account in accordance with the rulings of the Court of Appeals of that State; and in this mode of procedure both parties have acquiesced, although it is one of the grounds of grievance of the appellant that the rulings in question have not been fully followed. There is nothing in our own law antagonistic to this course, and the result of the accounting, in our view of the case, would be the same under the law of the District of Columbia as under the law of the State of Maryland. We do not desire it to be understood, however, that we acquiesce without reservation in the theory that all the incidents of mortgage in this District can be made referable at the will of parties to the laws of other States, and that we are always to be governed by such laws in their construction.

That the device of premium shares of stock, as they are called, is, in cases like the present, a cloak for usury, we regard as too plain for argument. It was so held by the Court of Appeals of Maryland in the case of *White* v. *Williams,* 90 Md. 719, where the precise point was under consideration, and where it was said:

"The premium authorized to be charged by building associations is a sum of money to be paid for the loan in advance, and the stipulation providing for the monthly sum called premium in addition to the legal rate of interest, during the continuance of the mortgage, is not authorized by the statute, but is usurious."

It is not sought by the appellant to controvert this proposition as applicable to the present case, and we do not think that it can reasonably be questioned. What it is sought to question is the extent of its application as made by the auditor and by the court below. It is attempted to be maintained that, inasmuch as of the premiums of sixty cents paid each month on each of the so-called premium shares in this case the sum of fifty cents was provided to be carried to the loan account of the company and the sum of ten cents was provided to be carried to defray the operating expenses of the

company, therefore the appellee was entitled to receive credit only for fifty cents, and not for sixty cents on each share, as the auditor allowed. And in support of this contention the case is cited of *The Middle States Loan, Building and Construction Co.* v. *The Hagerstown Mattress Co.,* 82 Md. 506, where the appellant was the same party as in the case now before us, and in which there was an accounting over a mortgage of precisely the same character as those involved in this case. There it was said:

" In our opinion the mortgagor must be charged with the loan of $5,000, with interest thereon down to the filing of the bill of complaint, and is to be credited with its payments into the loan fund, to wit, fifty cents a month on each of its shares, with interest on each payment from the time it was made down to the institution of the suit. For the amount thus ascertained to be due the mortgagee is entitled to a decree, with interest thereon until paid."

But a careful reading of that case will show that it has only a partial or limited application to the controversy now before us, and that so far as it is applicable it has been duly followed and applied by the auditor. There no question arose as to premium shares of stock as distinguished from other shares of stock. Throughout the opinion of the court not a single reference occurs to any such distinction; and although the distinction does appear in the argument of counsel in the case, yet the question of the usurious character of the premium shares was not passed upon by the court. This question, however, was raised, and was distinctly adjudicated in the subsequent case already mentioned of *White* v. *Williams,* which must be taken as negativing any inference to the contrary that might be deduced from the silence of the court on this point in the previous case.

Now, if the device of premium shares of stock was usurious, as held in the case of *White* v. *Williams,* it is difficult to see why there should be any abatement of the usury from sixty cents to fifty cents, because the company chooses to apply ten cents of it to operating expenses. It could just

as easily have designated the fifty cents as operating expenses, and left only the ten cents liable to be characterized as usury. Or more easily still, it might designate the whole sixty cents as a fund for operating expenses, a very elastic term, and thereby, from its point of view, wholly evade and nullify the decision in the case of *White* v. *Williams*. But it cannot be permitted that the law should be evaded merely by designating what is in reality a usurious device by some harmless and euphonious name.

We are of opinion that there was no error in the allowance of the whole usurious premium of sixty cents per share a month as a payment on account of the indebtedness.

2. But the principal contention of the appellant is, that the appellee, not being the original mortgagor, but only a grantee or assignee of the mortgagor through divers *mesne* conveyances, is not entitled to have the advantage of the usury paid by his predecessor in the title. And in support of this contention the cases are cited of *Hough* v. *Horsey,* 36 Md. 181; *Mahoney* v. *McCubbin,* 54 Md. 268; *Log Cabin Building Association* v. *Gross,* 71 Md. 456; *Fulford* v. *Keerl,* 71 Md. 397; *De Wolf* v. *Johnson,* 10 Wheat. 367; and the Am. & Eng. Encyc. of Law (1st ed.), Vol. 27, p. 952, and cases referred to in note 2 on said page. In reference to the right of a grantee of mortgaged property to take advantage of usurious payments made by his predecessors in the title on account of the mortgage debt there is a well-established distinction in the law between the case of one who takes the property with the specific agreement to pay the mortgage debt according to the face of the mortgage as part of the consideration for the land purchased, and the case of one who merely purchases the equity of redemption, without any special agreement as to the application of the purchase money, or any reference to the particular amount due on the outstanding mortgage. *Hough* v. *Horsey,* 36 Md. 181; Am. & Eng. Encyc. of Law, Vol. 27, pp. 952–954. Under the former head fall the cases above cited by the appellant; under the latter may be enumerated the cases of *Trumbo* v. *Blizzard,* 6 Gill & J. 14; *Banks* v. *McClellan,*

24 Md. 62, and *Andrews* v. *Poe,* 30 Md. 485.   There is authority also for the proposition that only the immediate mortgagor himself may take advantage of the usury, and that no assignee or grantee from him may do so.

We do not deem it necessary to determine under which class the present case falls; for the parties by their conduct have themselves solved the difficulty.   It is shown by the record that the appellee was admitted by the appellant in the place and stead of the original mortgagor or mortgagors, with all their rights, privileges, and liabilities.   The stock of the original mortgagors was transferred to the appellee on the books of the company, and he was admitted as a member of the company to all intents and purposes in the place of the original mortgagors.   He became the assignee of all the rights of the original mortgagors in the premises. There was here, it must be remembered, not an ordinary mortgage with its ordinary incidents, the condition of which could readily be ascertained by any one dealing with the mortgaged property, but a continuous contract to pay certain specified sums of money until the stock representing the mortgage should become fully paid up.   In such cases the grantee or successor of the mortgagor in the property, when recognized and admitted into membership by the company, becomes of necessity his assignee in the contract, in privity with him, and therefore entitled to deal with the contract as if it were originally his own.   We are, therefore, of opinion that he was entitled to the benefit of all the payments made by his predecessors in the title, and that there was no error in crediting him therewith.

We think that the decree appealed from should be *affirmed, with costs.   And it is so ordered.*