THE WASHINGTON NATIONAL BUILDING AND LOAN ASSOCIATION *vs.* WM. R. ANDREWS, TRUSTEE, AND WM. T. DAVIDSON.

*Building Associations—Usury—Premiums For Advances to Members.*

The grantee of land subject to a usurious Building Association mortgage, who did not agree to pay the specific mortgage debt but only the encumbrances on the property, may set up the defence of usury against the Association.

Code, Art. 23, sec. 98, authorizes Building Associations to charge their members such premium as may be agreed upon for lending to them the matured value of their shares of stock, and that the borrower may agree to pay such premium in instalments to be secured in the mortgage to the Association. *Held,* that the premium which may be so charged must be a definite and fixed sum agreed upon by the parties and not a certain amount to be paid monthly when the number of such payments to be made is uncertain because dependent upon the success of the Association.

A subscriber to twelve shares of the stock of a Building Association of the par value of one hundred dollars applied for an advance of $1,200, offering to pay a premium of fifty cents per month per share in addition to six per cent interest on the money to be advanced. In the mortgage to secure the loan of $1,200, the borrower agreed to pay $19.20 per month until the maturity of the stock, not exceeding 84 months, after which interest at six per cent only was to be paid until maturity. This amount was made of $7.20 dues and $12, interest and premium, monthly. A by-law of the Association provided that the rate of interest on advances shall be six per centum per annum with such monthly premium as may be bid therefor. After a number of payments had been made the mortgagor assigned his interest to other parties. Upon a sale under the mortgage after a default exceptions were filed by the original mortgagor and the assignee to the claim of the Building Association to be paid the stipulated premium. *Held,* that the monthly sum of fifty cents per share which the mortgage provided for, in addition to six per cent interest on the sum advanced, was not such a premium as the Association is authorized under Code, Art. 23, sec. 98, to charge because that is not a fixed and definite sum but the amount ultimately payable as premium is uncertain and that consequently such premium is a usurious charge which should not be allowed to the Building Association out of the proceeds of the sale.

Appeal from an order of the Circuit Court for Anne Arundel County (REVELL, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*James M. Munroe*, for the appellant.

*James W. Owens* (with whom was *Robt. Andrews* on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Anne Arundel County ratifying one and rejecting the other of two alternative auditor's accounts which distributed the proceeds of land sold under a building association mortgage. Neither the validity of the mortgage nor the regularity of the sale is challenged. The sole dispute is over the distribution of the proceeds of sale the main question being whether the mortgage transaction was or was not usurious.

Account A, which was ratified, allowed the appellant as mortgagee only the amount loaned, with interest at six per cent less the sum of the payments made on account and awarded the balance of the fund to the appellee as owner of the equity of redemption. Account B, which was rejected, distributed the proceeds of sale in accordance with the terms of the mortgage which made the fund insufficient to pay the appellant's claim.

The appellant was incorporated in the State of Virginia but it has its principal office in Washington and also does business in Maryland. Its charter does not appear in the record, which contains only a few extracts from its by-laws, but we will assume that it is a building or homestead association within the contemplation of the laws of this State. It appears from the by-laws that the corporation from time to time advanced, to such of its members as applied for it, the matured or par value of their stock upon acceptable mortgage security. The by-law authorizing the making of the advances distinctly provides "that the rate of interest thereon shall be six per cent per annum with such monthly premium as may be bid there-

for." Stock was regarded as matured when the payments standing to its credit in the loan fund together with its apportioned share of the profits of the association amounted to one hundred dollars per share that being its par value. The recipient of the advance was required at the time of its receipt to transfer the shares of stock, upon which it was made, to the corporation. The time requisite for the stock to thus mature was of course uncertain depending mainly upon the success of the enterprise, but the borrowing member was in some measure protected by a by-law providing that the payment of monthly dues upon redeemed stock would not be exacted for more than 84 months on each share.

In the present case William T. Davidson, having subscribed for twelve shares of the stock of the appellant, applied for an advance of $1,200 thereon offering in his application to pay a premium of fifty cents per month per share of stock in addition to six per cent interest on the money to be advanced. The advance was granted to him on March 25th, 1895, and he secured its repayment by his bond to the appellant with a mortgage on two lots of ground in Anne Arundel County. Both the bond and the mortgage require Davidson to pay into the association the lump sum of $19.20 per month until the stock matures, not exceeding 84 months, after which time if the stock has not then matured he is to pay interest at six per cent on the sum advanced to him until the stock does mature. Neither the bond nor the mortgage discloses the items which make up the gross monthly payment of $19.20, but the pass-book issued to the mortgagor indicates that it consists of $7.20 dues and $12 interest and premium.

Davidson held the mortgaged property until August, 1895, when he sold it to Timothy D. Keleher, who held it until 1901, when he was adjudicated a bankrupt and the appellee Andrews, was made his trustee. Both the trustee and Davidson, the original mortgagor, came into this case by leave of Court and filed exceptions setting up the defense of usury. While Keleher owned the property he made payments to the appellant, which were accepted by it on account of the mort-

gage debt, sufficient to meet all of the payments called for by the terms of the mortgage up to May 31st, 1899. The property was sold for a failure to make the payments thereafter falling due.

In *The Log Cabin Assn.* v. *Gross*, 71 Md. 456, and *Hough* v. *Horsey*, 36 Md. 181, it was held that where it appeared on the face of the deed or by evidence *aliunde* that the grantee of property subject to an usurious mortgage had agreed specifically to pay the mortgage debt he would not be permitted to set up the defense of usury to the mortgage, although the right of the original mortgagor to make that defense was there recognized. The present case differs from the two just cited in that the deed from Davidson to Keleher does not specifically mention either the mortgage or the debt thereby secured. The only reference in that deed to liens on the property conveyed by it appears in the covenent of warranty which warrants the title "subject to *certain incumbrances* aggregating the full sum of twenty-two hundred dollars ($2200) which incumbrances the said party of the second part hereby agrees to assume." It does not appear what portion of the $2200 represented the Davidson mortgage and therefore it cannot be said what amount the grantee assumed to pay in that connection. Furthermore, as both the original mortgagor and his grantee set up the defense of usury in the present case we think the Circuit Court was right in admitting and passing upon it, and we will now consider the propriety of its disposition thereof.

Assuming that the monthly instalment of $19.20 which the mortgagor was required by the terms of the mortgage to pay included the premium of fifty cents per month, that he offered to pay on each of his twelve shares of stock in addition to interest at six per cent when he applied for the advance of $1200, we are confronted with the question whether that monthly sum of fifty cents per share constituted a premium within the meaning of sec. 98 of Art. 23 of the Code, or, being a payment in excess of legal interest for the use of the money advanced, was an usurious exaction from the mortgagor.

The distinction between an ordinary loan of money and the advancement by a building association to its member of the ultimate value of his shares by way of redemption has been clearly recognized by this Court in numerous cases, but the privilege accorded by law to such corporations of charging a premium or bonus in addition to the legal interest on the amount of such advances has always been strictly construed. In *Birmingham* v. *Md. &c.*, *Homestead Assn.*, 45 Md. 544, it is said "the privilege thus granted is a very unusual and extraordinary one and no contract should be brought within its operation unless made and executed in strict conformity with the very terms of the law. Clearly no latitude or liberality of construction should be indulged in, in order to extend the operation and effect of such a provision but on the contrary its extraordinary character * * * justly subjects it to a rigid and strict construction." The doctrine thus early laid down has been recently reasserted by us in the case of *White* v. *Williams*, 90 Md. 719-727.

Sec. 98 of Art. 23 of the Code, as it stood prior to the passage of the Act of 1894, authorized building assciations to charge their members "such premium as may be agreed upon" for advancing to them the matured value of their shares of stock. In construing that state of the law this Court held, in *Geiger* v. *The 8th German Building Assn.*, 58 Md. 573–4, that a by-law and a mortgage made in pursuance of it, requiring a member whose shares of stock had been redeemed to pay in addition to his dues and interest, thirty cents per week *as premium* for each share of stock, were usurious and the Court by its decision relieved the member from the payment of the premium. In the more recent case of *White* v. *Williams, supra,* we again had occasion to consider the effect of a mortgage to a building association (made prior to the Act of 1894, ch. 321) which required one of its members whose shares of stock had been redeemed to pay in addition to dues and interest a monthly premium of $7.50 during the continuance of the mortgage. We held in that case that the word "premium" as used in 'sec. 98 of Article 23, as it then stood meant a sum of

money rendered fixed and definite by agreement of the parties, and did not include a monthly sum such as was called for by that mortgage.

The only change in sec. 98 of Art. 23 made by the Act of 1894, so far as it relates to the premium, is the addition of a provision that the borrower, instead of paying the whole amount of the premium in advance or having it deducted from the sum advanced to him by the association, may pay it in such weekly, monthly or other instalments as may be agreed upon and its payment may be secured by the mortgage given to the association for the repayment of the advances.

The change thus effected in the law relates solely to the *time and method of payment* of the premium and affords no warrant for substituting an indefinite or variable amount for the *fixed and definite sum* that we held in *White* v. *Williams*, to be the meaning of the words "such premium as may be agreed upon" which still remain in their original place in the amended statute.   Nor can we in adhering to the strict construction hitherto applied to the exercise of the right to charge premiums by such associations, hold that the mere provision that no more than 84 instalments shall be exacted of the mortgagor brings the premium in the present case within the fixed and definite sum required by the statute.   It is not a fixed premium payable in instalments.   On the contrary although the amount of each instalment is specified the total premium is uncertain and indefinite depending, within the 84 months, upon the success of the association and it is therefore not such a premium as that body is by law authorized to charge.

A premium payable in an indefinite number of small instalments would be a delusive thing appearing to the borrower to be a lighter burden than it in reality is and tempting him to yield to its imposition with a readiness which he would not display if he were compelled to face it as an aggregate sum. The law should not make it easy to run in debt.   It should at least require building associations, when exercising the exceptional privilege of exacting a premium in addition to legal

interest for the use of money, to take from the borrower an obligation for the payment of only such a premium as clearly falls within a strict and literal construction of the law. It is further to be. observed that this Court has in several cases condemned as evasive, and tending to elude the restrictions which the statute imposes upon parties to transactions such as the one before us, the practice of combining in one gross sum in the mortgage all of the obligations to be met by the mortgagor without disclosing the respective amounts of principal, interest and premium which enter into its composition. *Waverley Mut. L. & L. Assn.* v. *Buck*, 64 Md. 343; *The Peter Building Assn.* v. *Jaecksch*, 51 Md. 204.

As the so-called premium in this case was to be paid *in addition to six per cent interest* for the use of the money advanced it was an usurious charge and the appellant is not entitled to be allowed it out of the proceeds of the mortgage sale.

It does not appear from the face of either the mortgage or the bond what portion of the monthly payment of \$19.20 to be made by the mortgagor, was interest but Article 4, of the by-laws of the appellant appearing in the record, distinctly provides that the rate of interest on advances to members shall be six per cent. Auditor's account A, allowed interest at that rate on its advances but disallowed the premium. We therefore think that its ratification by the Circuit Court was proper and the decree appealed from should be affirmed.

*Decree affirmed with costs.*

(Decided November 20th, 1902.)