Opinion delivered May 13, 1887.

No. 5475.

JAMES JACKSON *v.* ANNA LUCY CASSIDY.

1. ASSIGNMENT OF ERROR—An assignment of error to the effect that the court erred in overruling a general demurrer "and special exceptions numbers one, two, three and four of plaintiff to defendant's amended original answer, for the reasons set forth in said several exceptions," can not be considered; and the fact that the supposed errors are specified in the propositions submitted by counsel does not cure the defect.

2. INTEREST—CASES APPROVED.—Interest can not be charged upon a premium on a loan made by a building and loan association to a member thereof, since this would be a charge not on what the member received, but upon what he relinquished to the association. To this extent the cases of Association v. Gallagher, 25 Ohio State, 208; Society v. Taylor, 41 Maryland, 409; Association v. Blackburn, 48 Iowa, 385; Gordon v. Association, 12 Bush, 110, and Martin v. Association, 2 Coldwell, 418, approved.

3. A member of a building and loan association, who owned five shares of one hundred dollars each, desiring a loan, bid upon her stock a premium of fifty-seven per cent and received in cash forty-three per cent. She thus received from the association the two hundred and fifteen dollars, and executed her obligation for five hundred dollars at six per cent interest. The five hundred dollars bore interest at six per cent per annum, to be paid in monthly instalments of one-half per cent. She further agreed to pay one dollar per month on each share of stock and all fines and other charges that might be assessed against her as a member of the association. The stock was transferred as collateral security, and a deed of trust given on land to secure payment, *held:*

(1) Since the contract was for a loan of two hundred and fifteen dollars, and required the borrower to pay more than twelve per cent for the use of the money, she having agreed to pay six per cent on the five hundred dollars, it was in violation of the statute, usurious and void as to the whole amount of interest.

(2) The association was not a partnership, and the decisions regarding advancements made to a partner out of a common fund in which he has an equal interest, have no application.

(3) The vice in the contract was not cured by an entry made by the association after foreclosure sale, of a credit to the borrower of a sufficient sum to reduce the interest to twelve per cent per annum. The entry was in itself evidence that the lender was a conscious violater of the law.

(4) On a proper statement of accounts, the association being in debt to the borrower, the sale of her property under the deed of trust was void, and the purchaser acquired no title.

APPEAL from Travis. Tried below before D. W. Doom, Esq., special judge. .

*Robertson & Williams,* and *Smith & Trigg,* for appellant, on their proposition that the court erred in its thirty-fourth conclusion of fact to the effect that the two hundred and fifteen dollars advanced to appellee by the Austin Home Building and Loan Association was an ordinary loan of money for interest, when the evidence showed that the money was advanced by the association in redemption of five shares of its capital stock held by appellee as a member of said association in accordance with its charter and by-laws, cited White v.

Mechanic's Building Association, 22 Grattan, 233; Winchester Building Association v. Gilbert, 23 Grattan, 787; Parker v. Fulton Loan and Building Association, 46 Georgia, 166; Pattison v. Albany Building and Loan Association, 63 Georgia, 373; Shannon v. Dunn, 43 New Hampshire, 194; Merrill v. McIntire, 13 Gray, 157; Delano v. Wild, 6 Allen, 1; Hoboken Building Association v. Martin, 2 Beasley, 428; Robertson v. A. H. Association, 10 Maryland, 397; Red Bank Mutual Building and Loan Association v. Patterson, 27 New Jersey Equity, 223; Massey v. Citizen's Building and Loan Association, 22 Kansas, 624; Brigham v. Dana, 29 Vermont, 1; Citizen's Mutual Loan Association v. Webster, 25 Barbour, 263; Law of Building Associations, 326, 357.

On their proposition that appellant was an innocent purchaser for value, and without notice of the defenses set up, and the conclusion of law to the contrary, is unsupported by the facts, and is not the law of the case, they cited Flanagan v. Oberthier, 50 Texas, 379; Seguin v. Maverick, 24 Texas, 526; Sydnor v. Roberts, 13 Texas, 599; Barnes v. Hardeman, 15 Texas, 366; Woodward v. Suggett, 59 Texas, 621; Parker v. Coop, 60 Texas, 111; Eylar v. Eylar, 60 Texas, 315; Hemphill v. Watson, 60 Texas, 679; Watson v. Aiken, 55 Texas, 536; Coor v. Spicer, 65 North Carolina, 401; 1 Hilliard on Mortgages, 550, 551; 2 Jones on Mortgages, 1808, 1886; Wade on Notice, 61, 62, 307, 325.

*Walton, Hill & Walton,* for appellee, cited Revised Statutes, article 2972; Endlich on Building Associations, section 357; that defense of usury is available, Watson v. Aiken, 55 Texas, 537; Revised Statutes, articles 2978, 2979; Endlich's Law of Building Associations, section 398.

On the proposition that performance extinguished the power to sell, and a sale afterwards, under the power, even to an innocent purchaser, was void, they cited 2 Perry on Trusts, third edition, page 169, section 602 i.

WILLIE, CHIEF JUSTICE. Under repeated decisions of this court the first error assigned upon this appeal can not be considered. We are not informed by the assignment whether the court erred in overruling the general demurrer, or whether it erred in overruling some one of the many special exceptions taken to the answer. The fact that the errors complained of are specified in the propositions, does not cure the defect in the

assignment. In view, however, of a decision upon the findings of law and fact made by the judge below, his ruling upon the demurrer and exceptions becomes of no importance.

The Austin Home Building and Loan Association was incorporated under the general laws of our State, for the erection of buildings and the accumulation and loan of funds for the purchase of real property. Its charter had "this extent, no more." The Association adopted a set of by-laws, which it will not be necessary to repeat, as they are substantially the same as those which govern the numerous associations of the kind existing throughout the United States. On the fourth day of each month the money of the association was offered for loan to the member who would pay the highest premium for it, that is receive the smallest amount in cash upon his shares of stock, and execute his obligation for the payment of their full ultimate value, i. e., one hundred dollars to each share. The appellee owned five shares whose ultimate value was five hundred dollars. She agreed to take forty-three per cent on that amount in cash, bidding thereby a premium of fifty-seven per cent; and accordingly she received from the association two hundred dollars and fifteen cents, and executed her obligation for five hundred dollars. This five hundred dollars bore interest at the rate of six per cent per annum to be paid in monthly instalments of one-half per cent; and the obligation for its payment included a further stipulation to pay one dollar a month on each share of stock, and all fines and other charges that might be assessed against the obligor. It provided for the return of the loan at any time, which, according to the by laws, could be done by repaying the amount received, and a part of the premium bid in the proportion the apparent value of the stock bore to its ultimate par value and for foreclosure in default of over six months in payment of dues and interest.

To secure the performance of this obligation, Miss Cassidy transferred her stock to the Association by way of collateral security, and executed a deed of trust to that body upon the land in controversy. She paid dues, fines and interest for some time, but finally defaulted for more that six months and thereafter the deed of trust was foreclosed, and the property sold under it was purchased by one Morris, who transferred his bid to the appellant. The deed of trust made the then president of the Association and his successors in office trustee for the execution of the trust; and in default of their acting, it was to be executed by

the sheriff of Travis county. The sale under the deed was made
by a deputy sheriff of Travis county. At the time the sale took
place, the books of the company showed that Miss Cassidy's
account with the company was as follows:

She was charged with the amount paid her...............$215.00

| | |
|---|---:|
| Fines...................................................... | ..10 |
| Dues on stock in arrears.................................. | 74.60 |
| Interest.................................................. | 32.50 |
| Total.....................................................$329.20 | |
| She was allowed as credits—value of her stock at the time.....................................................$247.25 | |
| Rebate of interest for 52 months at 35c................... | 18.20 |

Which statement brought her in debt to the company....$  63.75

The property was sold under the deed of trust for ninety dol-
lars, part of which went to pay the expenses of the trust, but
there was a balance still left more than sufficient to pay the
sixty-three dollars and seventy-five cents due from Miss Cassidy.
What became of this balance is not shown. The land sold was
worth about seven hundred and fifty dollars.

It is apparent that if the account is to be stated as it is taken
from the books of the company, the appellee was indebted to the
Association in the sum of sixty-three dollars and seventy-five
cents, and it was authorized to foreclose the deed of trust. But
it is claimed by the appellee that her contract with the company
was usurious, as it stipulated for more than twelve per cent per
annum interest on the sum received by her; and that as a conse-
quence she must be credited with all the sum paid by her as in-
terest, and no other amount of this kind must be charged against
her. If this be so, the thirty-two dollars and fifty cents charged
as interest must be deducted; and it having been proved that
Miss Cassidy had paid to the company ninety-five dollars as in-
terest on her loan, that amount must be credited to her. This
restatement of the account brings the Association in debt to her,
and makes the sale under the deed of trust unauthorized.

Our statute declares that all written contracts whatsoever,
which may, in any way, directly or indirectly, stipulate for a
greater rate of interest than twelve per cent per annum, shall
be void and of no effect for the whole rate of interest. (Rev.
Stats., art. 2979.) If, therefore, the contract bound Miss Cassidy

to pay more than twelve per cent interest upon the money she received from the Association, it is void as to the entire interest, and she must receive credit for every item of interest paid, and must not be charged for such unpaid amounts as have accrued in this way under this contract.

The effect of the contract was to bind Miss Cassidy to pay six per cent interest on five hundred dollars for the use of two hundred and fifteen dollars, which would be near fourteen per cent on the latter sum. She therefore either paid lawful interest upon money she had never received, or unlawful interest upon money she had received.

The weight of authority holds it unlawful to charge interest upon the premium; for this is a charge, not upon what the member receives, but upon what he relinquishes to the society. It is very easy to see how, under the guise of such a transaction, the usury laws might be evaded and the member be made to pay for the use of money a much larger premium than our statute allows. (Association v. Gallagher, 25 Ohio State, 208; Society v. Taylor, 41 Md., 409; Association v. Blackburn, 48 Iowa, 385; Gordon v. Association, 12 Bush., 110; Martin v. Association, 2 Cold., 418.)

Hence, if the contract was a loan of two hundred and fifteen dollars to the appellee, and required her to pay more that twelve per cent per annum for the use of the money, by reason of charging six per cent upon five hundred dollars, then it was forbidden by law and void as to the whole amount of interest. It was a desire to evade the usury law, and must not be permitted to succeed.

It matters not what would be the legal conclusion if the sums paid as interest were not more than twelve per cent per annum upon the sum loaned. We are to deal in this case with a contract where the interest reserved is more than twelve per cent upon the amount received by the borrower.

It is contended that no question of usury arises, because the transaction was not in reality a loan of money, but an advance by the Association to Miss Cassidy of what she was willing to receive for her stock at that time, rather than wait till it attained its ultimate par value. Such contracts have been upheld in England and in some of the American States, on the ground that they are not, properly speaking, loans, but advancements made to a partner out of the common fund, in which he has an equal interest with his fellow members. (Sil-

ver v. Barnes, 37 Eng. Crim. Law Rep., 335; Massey v. Citizens', etc., Association, 22 Kas., 624; Delano v. Wild, 6 Allen, 1; 11 C. E. Green, 351; Shannon v. Dunn, 43 N. H., 194; Parker v. Fulton, etc., Association, 46 La., 166.)

It is to be remarked that in some of these cases the charter of the associations authorized them to make such contracts with their members, and the decisions rest upon the authority thus granted in their acts of incorporation. In others the associations were not incorporated, and were in fact partnerships.

There seems to be serious objections to considering the contract a partnership transaction when made with an association like the present or others existing under similar laws. The association is not a partnership, but a body incorporated by the statutes of the State. Whilst in a partnership each member preserves his individuality for many purposes connected with the firm business; in a corporation he loses it altogether in all dealings had between himself and the corporate body. The member, as a person, has entirely different rights from what he possesses as a stockholder in the company. When he deals with the latter he does so as if he were dealing with another individual, or with a body in which he held no membership. If he makes a contract to receive money from it, and agrees to pay therefor more than lawful interest, the contract is usurious, though his ultimate right in the interest to be paid is enough to reduce the remainder to less than the prohibited per cent.

Nor can the amount paid the member be treated as a mere advance in such sense as to deprive the sums paid for the use of the money of their character as interest. If the transfer were an absolute sale, it would be unobjectionable, because the owner could part with his property for any price he might choose to take for it. But the transfer is not of that character. If so, the rights and duties of the vendor as a member of the body would cease immediately upon the sale. But in this case the appellee still continued to be a member of the corporation, and subject to all the duties imposed upon other members. She had to continue the payment of dues and fines as in case of other members, and not only so, but had to pay interest upon the amount received upon her stock. Besides, the by-laws themselves term the transferred stock a collateral security to the performance of the obligation made when the loan is taken. The borrower, too, had the privilege of returning the money, with interest and a proportionate amount of premium, and thereby to

redeem her stock. In case of default in the payment of dues and interest, both principal and interest might be collected by proceeding upon the securities given by Miss Cassidy to the Association. The stock became forfeited, and the deed of trust liable to be foreclosed for the purpose of collecting this principal and interest.

In the ordinary affairs of life, money advanced upon such securities, with the understanding that both principal and interest may be collected by realizing upon the securities, is considered a loan. A debt is created; otherwise the party advancing the money has no right to recover principal together with interest on the amount advanced. Having the full effect of a loan, it must be treated as such, considered in reference to our usuary laws, otherwise the few features of the transaction which give it a different appearance would furnish a device by which these laws might be evaded altogether. Besides the by-laws of the association call, the transaction a loan, and treat it as such wherever it is mentioned.

We think the contract was one for the loan of money, and that the interest to be paid was more than twelve per cent per annum, and the agreement to it was void. In this view we are supported by a large number of courts of the highest authority, the decisions of some of which we have cited. (Mills v. Salisbury Association, 75 North Carolina, 292; Association v. Graham, 7 Nebraska, 173; Martin v. Nashville Association, 2 Cold., 418; Herbert v. Building Association, 11 Bush., 296; Bechtold v. Brehm, 26 Pennsylvania State, 269.)

This vice in the contract was not cured by the entry after the sale of a credit to the borrower of sufficient to reduce the interest to twelve per cent per annum. The law does not allow the usurer to evade punishment in that way. It will not allow him to violate its provisions, take the chances for collecting the unlawful interest, and, when detected, by a stroke of his pen to place himself in the position of one who has demanded no more than the law allows him. If this can be done the statute against usury had as well be repealed.

The fact that the Association allowed this credit is, however, proof satisfactory that they were conscious that it had received more interest on the loan than the law allowed, and that the transaction was just what we have held it to be. The contract being usurious, the court below properly restated the account by deducting the item of interest charged and crediting the appellee

with that already paid.    This left the Association in debt to her at the very time it proceeded to sell the land in controversy to satisfy a debt due from her to the company.  The sale was, therefore, without authority and void.    The appellant was in reality the purchaser at the sale, as he took Morris's bid off his hands. Performance extinguished the power to sell, and a sale afterward was void even as to an innocent purchaser.  (2 Perry on Trusts, sec. 602.)

Besides, the appellant was charged with notice of the recitals in the deed of trust, and these were sufficient to put him upon inquiry as to the whole state of the transaction between Miss Cassidy and the Association.    Had he examined this he would have found that the sale was unauthorized.

These views render it unnecessary to pass upon the right of the deputy sheriff to make the sale.    But we may add that the deed authorized the then president of the Association or his successors in office to execute the trust; if these declined or were unable to act, then the sheriff of the county might do so. We can not see what authority the deputy sheriff had to act as trustee, when he was neither named in the deed, and no reason is shown why the president then in office did not make the sale.

We think there is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered May 17, 1887.

Justice Gaines did not sit in this case.