**PANSY OIL CO. et al. v. FEDERAL OIL CO. et al.**

**No. 4922.**

Court of Civil Appeals of Texas. Texarkana.
Jan. 30, 1936.

Rehearing Denied Feb. 6, 1936.

454

Tom L. Beauchamp, Frank Bezoni, and Pollard & Lawrence, all of Tyler, for appellants.

McGown & McGown, B. E. Godfrey, and J. M. Scott, Jr., all of Fort Worth, and Hirsch, Susman & Westheimer, of Houston, for appellees.

HALL, Justice.

On August 4, 1931, J. W. Kelly and S. J. Taylor, as sellers, and W. B. Powell, as buyer, entered into the following contract:

"State of Texas, County of Tarrant

"This Agreement between J. W. Kelly and S. J. Taylor, both of Tyler, Texas, Seller, and W. B. Powell of Fort Worth, Tarrant County, Texas, Buyer, Witnesseth:

"For and in consideration of the payments herein'after agreed to be made by Buyer to Seller, Seller sells and conveys to Buyer One Hundred Thousand Barrels of oil in, on and under the following described land, the same being 15 acres, more or less, in the County of Rusk, State of Texas, and being a part of the H. B. Dance Headright Survey, said lease being described as follows:

"Beginning at the N. W. corner of Block No. 2 and at the N. E. corner of Block No. 1 of the land described in the Oil & Gas Lease executed by Mrs. Jessie Menshaw to W. O. Alford on November 13, 1930, and which lease is recorded in Volume 174, page 239, in Rusk County Deed Records;

"Thence E. with the N. line of Block No. 2, 379.9 vrs. to N. W. corner of W. A. Tunstill's 10 acre lease;

"Thence South with Tunstill West line 95.3 vrs. to N. E. corner of E. L. Chapman's 20 acre lease;

"Thence West 379.9 vrs. to N. W. corner of E. L. Chapman 20 acre lease on West line of Block No. 2;

"Thence North with said line 195.3 vrs. to beginning.

"Said oil to be delivered by Seller to Buyer out of 7/16 of the total first production under said above described lease, as produced, in the manner hereinafter stated.

"The consideration for this conveyance is $2,500.00 in cash, to be paid on approval of the title to said oil in Seller by Buyer; $1,000.00 to be paid in cash within 5 days of the delivery of notice in writing to Buyer that the well to be drilled by Seller on said land has reached the depth of 1000 feet; $2,500.00 to be paid in cash within 5 days of the delivery of notice in writing to Buyer that said well has reached the Woodbine sand; and $4,000.00 to be paid in cash within 10 days after the delivery of notice in writing to Buyer that said well has been brought in as a commercial oil producer.

"Buyer shall have 3 days from the date of receipt of all abstracts, including supplement to date, in which to accept or reject the title, and if title is rejected, this conveyance shall be of no further force and effect, but if title is accepted to Buyer, then this conveyance is of full force and effect, conditioned, however, that the consideration above stated be paid in full, and

failure to pay such consideration to Buyer shall operate as a limitation upon this title, and this conveyance shall thereupon be of no further force and effect. All payments are to be made to the account of Seller at the Tyler State Bank & Trust Company, Tyler, Texas.

"Seller agrees to deliver said oil in the pipe line to which connection may be made on the authority of Buyer free and clear of all water and B. S., the quantity of oil delivered to be computed from regularly compiled tank tables, Seller to have the privilege of witnessing the gauge tickets, and, in addition to the deductions of the tank tables, corrections shall be made for temperature and impurities according to the Texas Company's local rules in force at the time said oil is delivered in said pipe line.

"Seller guarantees and warrants the title of said oil free and clear of all encumbrances and if at any time during the delivery of the oil hereby sold, and before payment therefor has been completed, a condition may arise in reference to title of said oil, or seller's right to deliver same, which the Buyer may reasonably consider to involve Buyer in a hazard in paying therefor, payment may be withheld until such conditions are removed, but deliveries thereof shall not be suspended during the time such payments are withheld, unless suspension thereof shall be requested by Buyer or his assigns. A suspension of payment above provided for shall not operate as a limitation on this conveyance.

"If Seller shall fail or refuse to deliver said oil in accordance herewith, this instrument shall then, upon the happening of such event, operate as a complete conveyance and assignment of the above described oil and gas lease insofar as it covers the land above described and contingent upon the happening of such condition we hereby grant, sell, convey and assign said lease, together with all personal property thereon unto him, the said W. B. Powell, his heirs, assigns, executors, and administrators forever.

"Seller agrees to begin delivery of said oil upon the completion of said well and before the 4th day of November, A. D. 1931, and to continue the same with full diligence.

"To have and to hold said oil unto the said W. B. Powell, his heirs, and assigns forever.

"Witness our hands this 4th day of August, 1931.

"J. W. Kelly,
"S. J. Taylor, Seller
"W. B. Powell."

Later, and after some $24,000 had been paid on the contract, suit was brought by appellants against the assignees of said contract to cancel same, for the recovery of all usurious interest with legal penalties, and for an accounting. Appellants alleged that the contract was intended to represent a loan of $10,000 and that same was entered into in the form set out above for the purpose of evading the usury laws of Texas.

The appellees answered with a general demurrer and special exceptions, and other defensive allegations not necessary to mention here.

Upon a hearing, the trial court sustained the general demurrer and two of the special exceptions to appellants' amended petition, and they declined to amend, whereupon the case was dismissed. From which order of dismissal, they prosecute this appeal.

■ Appellants assign as error the action of the trial court in sustaining the general demurrer and special exceptions to their petition. We shall direct our attention first to the assignment of error complaining of the action of the trial court in sustaining the general demurrer to the amended petition. The sufficiency of the allegations of appellants' petition will be tested by the rules set out in the cases cited next below.

In the case of Bexar Bldg. & Loan Ass'n v. Robinson, 78 Tex. 163, 14 S.W. 227, 228; 9 L.R.A. 292, 22 Am.St.Rep. 36, it is said: "'The essential elements of a usurious contract consist of a loan with the understanding that the money loaned is to be returned, and that a greater rate of interest is paid than the statute allows. Whether this be done directly or indirectly, or whatever may be the form or phase the contract assumes, is altogether immaterial.'"

And in Campbell v. Oskey (Tex.Civ. App.) 239 S.W. 332, 334, the following rules are quoted with approval:

"'Before "usury" in the legal significance of the term is established, the following elements and essentials must be proved by a preponderance of credible evidence:

456

" '1. A loan of money, as distinguished from an advance of working capital.

" '2. An agreement between the parties that the principal shall be paid absolutely.

" '3. The exaction of a greater compensation than allowed by law for the use of the money by the borrower, as such.' "

The parts of appellants' petition which are pertinent to the discussion and which are set out in appellants' brief are:

"That on the 4th day of August, 1931, Plaintiff, S. J. Taylor, together with his associate, J. W. Kelly, entered into a contract with the Defendant, W. B. Powell, whereby said W. B. Powell agreed to, and did, make a loan to the said Kelly and Taylor of Ten Thousand ($10,000.00) Dollars, according to the terms and conditions of a certain contract in writing, of said date, signed by the said J. W. Kelly, S. J. Taylor, and W. B. Powell * * * by its terms provides for the payment to the said Kelly and Taylor of the sum of Ten Thousand ($10,000.00) Dollars on conditions therein fully set out, which said instrument purports to be in form a contract for the sale of one hundred thousand barrels of oil to be produced from a well, or wells, situated on a 15 acre tract of land therein described and to be delivered out of a seven-sixteenths (7/16) of all of the oil to be produced from the wells which it was agreed should be drilled on said tract of land, but plaintiffs allege that, in fact, it was a contract to loan the said Kelly and Taylor the sum of Ten Thousand ($10,000.00) Dollars, in cash. * * *

"Plaintiffs allege that notwithstanding the language, terms, and conditions expressed in said contract, that the same was framed and purposely stated as an evasion of the usury laws of the State of Texas, and that, in fact, it was an agreement for the loan of Ten Thousand ($10,000.00) Dollars in money and for the repayment of the same in an amount which would exceed the principal with any legal rate of interest.

"That there has been, and was at the time of the execution of said instrument, a mutual understanding and agreement between all parties concerned that the oil produced from. said property should be sold by the plaintiff and the amount paid in cash equal to the market price of the seven-sixteenths (7/16) of all of the oil produced from said well, and that in accordance with said agreement and with the understanding and concurrence of all parties con-

cerned, plaintiffs have never delivered any part of the oil described and referred to in the instrument attached as 'Exhibit A' to the defendants, or either of them, and there was never any intention that the same should be done and neither of the defendants has ever demanded the delivery of the oil, but, in accordance with the mutual understanding and agreement, have always accepted cash payments, as above alleged, of the sale price which plaintiffs have received for the seven-sixteenths (7/16) of all of the oil produced and have received and accepted as a repayment of the loan of Ten Thousand ($10,000.00) Dollars and all interest thereon, the total sum of Twenty Four Thousand Two Hundred Seventy Five & 72/100 ($24,275.72) Dollars, which is far in excess of the principal due, together with the legal rate of interest and is the sale price of 33,750.98 barrels of oil; that the amount collected is usurious and unlawful and that said contract is an unlawful and invalid contract."

The petition as we view it is deficient in at least one particular, that with respect to the "payment of the principal absolutely." The only allegations in plaintiffs' petition with respect to the repayment of the principal is:

"Plaintiffs allege that notwithstanding the language, terms, and conditions expressed in said contract, that the same was framed and purposely stated as an evasion of the usury laws of the State of Texas, and that, in fact, it was an agreement for the loan of Ten Thousand ($10,-000.00) Dollars in money and for the repayment of the same in an amount which would exceed the principal with any legal rate of interest.

"That there has been, and was at the time of the execution of said instrument, a mutual understanding and agreement between all parties concerned that the oil produced from said property should be sold by the plaintiff and the amount paid in cash equal to the market price of the seven-sixteenths (7/16) of all of the oil produced from said well, and that in accordance with said agreement and with the understanding and concurrence of all parties concerned, plaintiffs have never delivered any part of the oil described and referred to in the instrument attached as 'Exhibit A' to the defendants, or either of them, and there was never any intention that the same should be done and neither of the defendants has ever demanded the delivery of the

oil, but, in accordance with the mutual understanding and agreement, have always accepted cash payments, as above alleged, of the sale price which plaintiffs have received for the seven-sixteenths (⁷⁄₁₆) of all of the oil produced and have received and accepted as a repayment of the loan of Ten Thousand ($10,000.00) Dollars and all interest thereon, the total sum of Twenty Four Thousand Two Hundred Seventy Five & 72/100 ($24,275.72) Dollars which is far in excess of the principal due, together with the legal rate of interest thereon and is the sale price of 33,750.98 barrels of oil; that the amount collected is usurious and unlawful and that said contract is an unlawful and invalid contract."

This allegation, standing alone, would not, in our opinion, import an absolute obligation to pay the principal of the alleged loan, and when taken in connection with the remainder of the petition and the contract attached thereto as an exhibit, the opposite is made to appear, that is, that the principal is to be paid only out of oil produced from wells to be drilled on the leasehold described in the contract. As said in Korth v. Tumlinson (Tex.Civ.App.) 73 S.W.(2d) 1048, 1049: "One of the first essentials of a petition for usury is that it must set forth the terms of the usurious contract under which the alleged usurious interest was paid. The terms of such a contract must show an understanding between the parties that the principal shall be repayable absolutely. 27 R.C.L. p. 208, § 9, and p. 220, § 21; 66 C.J. p. 194, § 103."

That portion of appellants' petition last quoted above, in our judgment, is nothing more than a legal conclusion of the pleader based upon the facts theretofore alleged, and his construction of the legal effect of the contract attached to his petition and made a part thereof. As such it could add no force to the facts already alleged, for as said by Judge Williams of the Supreme Court in Blaisdell v. Bank, 96 Tex. 626, 75 S.W. 292, 295, 62 L.R.A. 968, 97 Am.St.Rep. 944: "The facts alleged in the petition do not show this to have been other than the common transaction in which money is paid for drafts, accompanied by bills of lading representing the goods consigned as security. The allegation is that the drafts and bills of lading were indorsed in blank, and were transferred to and purchased by the bank. The conclusion from those facts is then stated: 'Whereby said bank became and was the owner of said drafts and bills of lading and of the cotton represented.' This is only a conclusion from the facts previously stated, and cannot be held to enlarge the legal effect of those facts."

And in the case of Wright et al. v. State ex rel. Walcott, 104 Okl. 57, 230 P. 268, 270, by the Supreme Court of Oklahoma, it is said: "'A demurrer does not confess or admit a conclusion of law deducted by either party from the facts pleaded. Neither does it admit any construction placed by him on any instrument pleaded and set forth in the complaint.' 21 R.C.L. 508, Sec. 70."

At best, the repayment of any amount under said contract or the arrangements as alleged in the petition rested on the contingency, first, that the well to be drilled would produce oil; and, second, that it would produce enough oil to fulfill the contract. In Truby v. Mosgrove, 118 Pa. 89, 11 A. 806, 807, 4 Am.St.Rep. 575, by the Supreme Court of Pennsylvania, it is said: "It is settled law that when the promise to pay a sum above legal interest depends upon a contingency, and not upon the happening of a certain event, the loan is not usurious." The petition, then, as we view it, is wanting in respect to the allegation of a promise to pay absolutely and unconditionally the principal of said alleged loan regardless of whether the leasehold produced oil. It has been held that in a suit of this character, it being quasi criminal, the party seeking to invoke the statute against usury (Vernon's Ann.Civ.St. art. 5073) must allege such facts as will bring him strictly within the statute. Rosetti v. Lozano, 96 Tex. 57, 70 S.W. 204; Whitlow v. Culwell, 16 Tex.Civ.App. 266, 40 S.W. 642; Gibson v. Hicks (Tex.Civ.App.) 47 S.W.(2d) 691.

Our holding with respect to the action of the trial court in sustaining the general demurrer to appellants' petition makes it unnecessary for us to consider the other assignments brought forward by appellants.

Therefore, the judgment of the trial court is affirmed.