**H. C. PICKRELL, Appellant,**

**v.**

**ALPHA PIPE & STEEL, INC., Appellee.**

**No. 7636.**

Court of Civil Appeals of Texas.

Amarillo.

Sept. 19, 1966.

Rehearing Denied Oct. 17, 1966.

Kirby & Ratliff, Littlefield, for appellant.

Thomas J. Griffith, Jr., Lubbock, for appellee.

CHAPMAN, Justice.

This is an appeal from a summary judgment granted appellee, Alpha Pipe & Steel, Inc., against H. C. Pickrell. The corporation is a family owned institution with the husband as secretary-treasurer. The suit is upon a penalty debt in an action filed by appellee upon an alleged usurious contract because of interest paid for the use and detention of money, for which notes, a deed of trust and a chattel mortgage lien were given by appellee to secure the payment thereof.

Several lender and borrower transactions between the parties culminated in a $6,600 note dated February 26, 1964, with interest included in its principal sum, payable in six monthly installments of $1,100 each begin-

ning on April 1, 1964, and bearing interest on its face of ten per cent per annum. The suit was filed seeking recovery under the definitions of Article 5069, Vernon's Ann. Revised Civil Statutes of Texas, and the prohibitions included in Article 16, Section 11 of the Constitution of Texas, Vernon's Ann.St. and Article 5071, Revised Civil Statutes of Texas.

Depositions were taken of appellant H. C. Pickrell, the lender, and George B. Snow, secretary-treasurer of appellee, the borrowing corporation. Several months subsequent thereto appellee through its counsel filed a motion for summary judgment. Appellant made an affidavit some seventeen days thereafter asserting his transactions with appellee constituted a joint venture or temporary partnership and were not loans as contemplated by the usury laws of Texas. The case was heard by the court on the pleadings and the record mentioned. A judgment was then rendered holding the record showed an absence of any genuine issue of material fact. We agree with the judgment rendered.

Though appellant's affidavit stated he agreed to furnish appellee the money as a business transaction, " * * * for what amounted to a legal joint venture" and "that such transactions are well within the legal meanings of joint ventures or some sort of temporary partnerships; * * * *" between the parties, his deposition admits he loaned $5,700 and collected $6,700. The note, secured by a deed of trust on some real property of appellees in Lubbock and a chattel mortgage on some personal property showed the loan to be due in full in the period from its date of February 26, 1964, to September 1, 1964.

The statements in appellant's deposition that the transactions constituted some sort of joint ventures or temporary partnerships are conclusions of law and would not be admissible in evidence. Rule 166–A, Section (e). " 'An affidavit * * that [is] but mere conclusions of law [is] insufficient to warrant the overruling of a

motion for summary judgment.'" Spark-man v. McWhirter, Tex.Civ.App., 263 S.W. 2d 832, 838 (writ ref.). The facts here do not show the characteristics of a joint venture. There were several different loan transactions culminating in the $6,600 note secured by the above described instruments, while a joint venture is usually limited to a single transaction. Thompson v. Duncan, Tex.Com.App., 44 S.W.2d 904; Thompson v. Reed, Tex.Civ.App., 61 S.W.2d 557 (N.W.H.). Neither do they show a partnership, which is defined in Section 6(1) of Article 6132b, Texas Civil Statutes, as "* * * an association of two or more persons to carry on as co-owners a business for profit." As will be shown later, no such conditions existed in this case.

By deposition Mr. Pickrell testified the first transaction he had with appellee in connection with furnishing him money in 1964 was when "* * * he told me he would give me a hundred dollars for a thousand dollars for a week, to—so he could go to Houston and get a truck load of steel." He admitted that he let him have the money. He further stated by deposition:

"Q. Is this mortgage taken to secure a loan that you made to Alsup Pipe & Steel?

"A. Yeah, I would think it is."

   *     *     *     *     *     *

"Q. Mr. Pickrell, this is a paper marked P–4. Is this the $6,600.00 note that you understand those were transferred into?

"A. Uh huh.

"Q. Now, is this a note that you took to secure a loan to Alsup Pipe and Steel, Inc?

"A. Yeah, I suppose so."

In answer to a question concerning a $200 interest payment Mr. Pickrell testified:

"Q. Well, what would it have been received for if not interest?

"A. Well, he told me he would give me so much money for the use of this money."

The deposition is replete with other statements of similar effect; i. e., that appellee told him he would give him the money he paid him above the principal for the use of the money.

Even upon examination by his own attorney appellant testified by deposition that he was going to use the money to "buy steel at Houston and build his business up there in Lubbock." (All emphases herein are ours.)

A study of the deposition shows that counsel for appellant obviously did his best to get testimony out of his client to show some sort of sharing arrangement, in one instance practically placing the answer upon the deponent's tongue. The questions and answers are as follows:

"Q. Now, on each of these occasions, was he going to let you share in this profit if you would furnish the money?

"A. Yeah, he was just going to—told me what he would give me for the use of that money.

"Q. And it was for the purpose of sharing in this transaction?

"A. Yeah, that would be what it would be."

The only sharing shown by the record on probative evidence was the interest appellant drew for appellee's use of his money.

Article 16, Section 11 of the Constitution of Texas, as amended August 11, 1891, provides: "All contracts for a greater rate of interest than ten per centum per annum, shall be deemed usurious, and the first Legislature after this amendment is adopted, shall provide appropriate pains and penalties to prevent the same; * * *"

The legislature did so provide. Article 5069, Texas Civil Statutes, defines interest

as " * * * compensation allowed by law or fixed by the parties to a contract *for the use* or forbearance or detention of money; * * *" Usury in the same statute is defined as " * * * interest in excess of the amount allowed by law; * * *"

Appellant urges as grounds for reversal that a fact issue was raised as to the intent to violate the usury laws and as to whether the transactions constituted a joint venture. The latter defense we believe has already been answered. He cites two early Supreme Court cases in support of his other contention[1] and an N.R.E. case by the Waco Court of Civil Appeals.[2]

■ The two Supreme Court cases were long before our summary judgment rule was passed (166–A, Texas Rules of Civil Procedure), which permits the trial court to consider depositions, admissions on file and affidavits where a motion for summary judgment is filed. At that time, the pleadings raising a defense and the instruments not showing on their face to be usurious, the question of intent would have required a jury trial upon demand therefor. But here we have the "summary judgment evidence" showing usury as a matter of law.

■ Moser v. John F. Buckner & Sons, supra, did not involve the summary judgment rule, no motion having been filed and the various contracts alleged not showing usury upon their faces. However, Justice Tirey speaking for the Waco court stated the question of intent may be one of law. It becomes one of law in our case by the summary judgment record which shows appellant collected interest far above the ten per cent allowed for appellee's use of his money.

There is no probative evidence that he had any interest in the steel business, and as stated above, his own testimony by deposition upon questioning of his own attorney stated appellee was going to use the money appellant loaned him to buy steel in Houston and build his (appellee's) business in Lubbock.

Appellant cites some other cases which involved collateral or side agreements which took the transactions out of usury but no such situations are shown in the record here.

■ It is true the note shows upon its face ten per cent interest, but: "The transaction is to be tested by its substance, not its form, and, if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it." Independent Lumber Co. v. Gulf State Bank, Tex.Civ.App., 299 S.W. 939 (writ ref.).

It has also been stated: "Parties cannot by entering into a form of contract valid and free from the taint of usury on its face under the cloak of such form violate our usury law without incurring its penalty." Commercial Securities Co. v. Rea, Tex.Civ.App., 78 S.W.2d 707, affirmed 130 Tex. 11, 105 S.W. 872.

■ A study of this record forces one to the conclusion, regardless of which party instigated the transactions, that they constituted loans which were usurious and that the trial court properly visited upon appellant the statutory consequences thereof.

Accordingly, the judgment of the trial court is affirmed.

1. Andrews v. Hoxie, 1849, 5 Tex. 171; Mitchell v. Napier, 1858, 22 Tex. 120.

2. Moser v. John F. Buckner & Sons, 1956, Tex.Civ.App., 292 S.W.2d 668.