**Billy MAXWELL, Appellant,**

v.

**ESTATE of James M. BANKSTON, W. O. Bankston, Executor, Appellee.**

**No. 7900.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 24, 1968.

Rehearing Denied Oct. 29, 1968.

---

Henry Stollenwerck, Biggers, Baker, Lloyd & Carver, Dallas, for appellant.

Charles O. Shields, Anderson, Henley, Shields, Bradford & Pritchard, Dallas, for appellee.

FANNING, Justice.

A summary judgment case. Appellant sued upon an oral agreement evidenced by a written memorandum. The written memorandum, on the letterhead of a firm of accountants, signed by one of its members, Ralph A. Rouse, C.P.A., and also signed by James M. Bankston, dated May 10, 1963, and addressed to appellant Billy Maxwell, reads in part as follows:

"Dear Mr. Maxwell:

"At the request of Mr. Bankston, I am writing this letter confirming the amount due as shown on the books and records of Red Bankston Motors, Inc., and my understanding of the agreement between you and Mr. Bankston.

"As of the last audit, January 31, 1962, the books of Red Bankston Motors, Inc. shows an amount of $3,025.00 due to you.

"It is my understanding that Mr. Bankston guaranteed you a 100% return for the use of this money, or a total of $6,050.00 to be paid in cash or other satisfactory consideration from the A. V. Morrison land deal.

Yours truly,
/s/ RALPH A. ROUSE
Ralph A. Rouse
/s/ JAMES M. BANKSTON
James M. Bankston"

James M. Bankston died; his executor paid appellant Maxwell the sum of $3,025.00 prior to appellant's suit against Bankston's estate and executor for an additional $3,025.00. Defendant defended upon the ground of usury. Both parties filed motions for summary judgment. The trial court, after considering the pleadings, the second motions for summary judgment of the parties, affidavits, defendant's request for admissions and responses thereto, answer to interrogatories, and the stipulations made by the parites, denied in part and granted in part said second motions for summary judgment. The effect of the trial court's judgment was to deny plaintiff-appellant recovery for the $3,025.00 sued for but to grant plaintiff-appellant judgment against defendant-appellee for the sum of $363.00 as 6% interest on $3,025.00 for two years, and costs were taxed against defendant-appellee. Plaintiff-appellant has appealed.

Appellant presents one point on appeal as follows: "The trial court erred in granting the judgment denying appellant full recovery for $3,025.00 together with interest, for the reason that the contract was a fully enforceable contract and not prohibited by any statute or public policy of this state."

Appellee in his brief contends to the effect that the contract in question was

usurious and that the trial court correctly sustained appellee's motion for summary judgment denying appellant recovery of $3,025.00 in addition to the $3,025.00 principal which principal had been paid to appellant by the estate. Appellee does not complain of the award of $363.00 interest against it and costs, and appellee seeks an affirmance of the judgment of the trial court.

From the record made before the trial court the following matters are clearly shown: James M. Bankston received and retained for about two years the sum of $3,025.00 from Billy Maxwell, and guaranteed Maxwell "a 100% return for the use of this money or a total of $6,050.00 to be paid in cash or other satisfactory consideration from the A. V. Morrison land deal", as stated in the above quoted written memorandum; that later the Morrison land was sold; Maxwell made demand for payment of $6,050.00, and James M. Bankston having died, W. O. Bankston, Independent Executor of the Estate of James M. Bankston, paid the sum of $3,025.00 as repayment of the principal and denied the balance of the claim on the grounds that the contract was usurious. It is also clear from the record that Maxwell owned no interest in the A. V. Morrison land either at the time Bankston received the $3,025.00 from Maxwell or thereafter, and it is also clear that Maxwell was not in any character of joint venture with Bankston with reference to the Morrison land.

The Texas constitutional and statutory provisions relating to usury are referred to and summarized in 58 Tex.Jur.2d, Usury, § 2, p. 64–65, as follows:

"§ 2. Constitutional and statutory provisions.

"Under authority granted by the constitution, the legislature has enacted statutory provisions classifying loans and lenders and fixing maximum rates of interest in certain instances. The Texas Regulatory Loan Act provides with certain exceptions, for the licensing and regulation of persons and legal entities making consumer loans with cash advances of a certain prescribed sum or less, and fixing the maximum rate of interest and other charges that may be contracted for and received by the licensees. The maximum rate of interest authorized is set forth by a comprehensive schedule, depending, in general, on the amount and term of the loan. Except where otherwise specifically provided by the legislature, as in the Texas Regulatory Loan Act, the parties to any written contract are authorized by statute to agree to and stipulate for any rate of interest not exceeding ten per cent per annum on the amount of the contract. The constitution, however, provides that in the absence of legislation fixing maximum rates of interest all contracts for a greater rate of interest than ten per cent per annum are to be deemed usurious; and in contracts where no rate of interest is agreed upon, the rate may not exceed six per cent per annum. This provision of the constitution applies to all contracts, whether written, oral, or both.

"Penalties are prescribed by the statutes, which contemplate forfeiture of the interest charged, forfeiture of both principal and interest charged and fine and imprisonment, or payment to the debtor of double the amount of interest charged and attorney's fees, on action by the debtor."

■ In determining the question of usury all devices are disregarded, and whenever the courts are satisfied that there is a charge contracted for, merely for the use of money, in excess of that allowed by law as interest, they treat it as usurious, though usury may be covered under the guise of some additional and different consideration. See 58 Tex.Jur.2d, Usury, § 9, p. 73–6 and authorities therein cited.

Appellant contends to the effect that the contract was not usurious because the

contract does not show an understanding between the parties that the principal shall be repayable absolutely. Also, stated in other words, appellant contends to the effect that usury can not be predicated on a transaction whereby the repayment rests upon a contingency. Appellant cites only three cases in its brief, which are listed below.[1]

When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan; and the added amount is interest which may not exceed the statutory maximum. See 58 Tex.Jur.2d, Usury, § 14, p. 82, and authorities therein cited.

In Campbell v. Oskey, 239 S.W. 332 (Tex.Civ.App.1922, no writ), plaintiff alleged he borrowed $750.00 from the defendant to purchase some diamonds, agreeing to repay defendant $1,050.00, and sued for $600.00 by reason of usurious interest paid to defendant. We quote from the court's opinion in *Campbell,* supra, in part as follows:

" 'The essential elements of a usurious contract consist of a loan with the understanding that the money loaned is to be returned, and that a greater rate of interest is paid than the statute allows. Whether this be done directly or indirectly or whatever may be the form or phase the contract assumes, is altogether immaterial.'

"In Jackson v. Cassidy, 68 Tex. 282, 4 S.W. 541, it was said:

" 'In the ordinary affairs of life, money advanced upon such securities, with the understanding that both principal and interest may be collected by realizing upon the securities, is considered a loan. A debt is created; otherwise the party

advancing the money has no right to recover principal together with interest on the amount advanced. Having the full effect of a loan, it must be treated as such, considered in reference to our usury laws, otherwise the few features of the transaction which give it a different appearance would furnish a devise by which these laws might be evaded altogether.'

"The evidence quoted shows an absolute obligation upon the part of Oskey to repay the $750 advanced to him by Campbell with the additional sum of $300. It matters not how the parties considered the matter. The controlling fact is that the evidence shows an agreement to repay the principal with an additional $300 for the use of the same. This, under the statute and decisions construing the same, is a usurious agreement.

"The appellant's position is thus summarized by him in his reply to the motion for rehearing:

" 'Before "usury" in the legal significance of the term is established, the following elements and essentials must be proved by a preponderance of credible evidence:

" '1. A loan of money, as distinguished from an advance of working capital.

'2. An agreement between the parties that the principal shall be paid absolutely.

'3. The exaction of a greater compensation than allowed by law for the use of the money by the borrower, as such.

'4. The intention to violate the usury law.

'The absence of any one of these elements conclusively refutes the claim that the parties have been guilty of usurious practice.'

1. Korth v. Tumlinson, 73 S.W.2d 1048 (Tex.Civ.App.1934, no writ); Pansy Oil Co. v. Federal Oil Co., 91 S.W.2d 453 (Tex.Civ.App.1936, writ refused); Ragland v. Short, 245 S.W.2d 368 (Tex.Civ. App.1951, mand. overr.)

"Tested by the rule relied upon by appellant, the evidence in our opinion conclusively evidences a loan as distinguished from an advance of working capital to a joint adventure, because there was an absolute agreement between the parties that the principal was to be repaid. As to the third element insisted upon by appellant, plainly the additional $300 was the compensation agreed upon for the 'use' of the money.

"As to the intention to violate the usury law, the contract speaks for itself. The intent is apparent. See Bank of United States v. Waggener, 9 Pet. 378, 400, 9 L.Ed. 163, 171, where it is said:

" 'Where, indeed, the contract upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur.' "

■ We construe the written memorandum-agreement above quoted as revealing a clearly usurious contract wherein Maxwell and Bankston agreed that the principal of $3,025.00 was to be paid absolutely and $3,025.00 additional was to be paid "for the use of this money".

We think the three cases cited by appellant in his brief are clearly distinguishable from the facts in the case at bar. *Korth,* supra (73 S.W.2d 1048), cited by appellant is distinguishable because there was no agreement that the principal should be absolutely paid to the lender, and the evidence also showed that Korth was to receive the land in the event the land was not sold and the contract in *Korth* was, in fact, a joint venture in which the parties pooled their resources of making a profit. *Pansy Oil Co.,* supra (91 S.W.2d 453), cited by appellant, is distinguishable because the repayment of the amount advanced was contingent on an oil well being drilled and also on the well producing oil in a certain quantity. *Ragland,* supra (245 S.W. 2d 368), cited by appellant, we think is not in point with the facts in this case and is clearly distinguishable.

In Pickrell v. Alpha Pipe & Steel Co., Inc., 406 S.W.2d 956, (Tex.Civ.App.1966, wr. ref., n. r. e.), a borrower sued a lender upon an alleged usurious contract because of interest paid for the use and detention of money. The lender loaned $5,700.00 and collected $6,700.00 in less than one year. The court sustained a summary judgment for the borrower and in its opinion observed that under Rule 166A, Tex.R.Civ.P., the court should enter a summary judgment in a usury case if the proper evidence was present, and the court further observed that the question of intent became a question of law in that case by virtue of the summary judgment record showing that the lender had collected for more than 10% interest for the use of his money and cited in support thereof the case of Moser v. John F. Buckner & Sons, 292 S.W.2d 668 (Tex.Civ.App.1956, wr. ref., n. r. e.). We quote from the court's opinion in *Pickrell,* supra, in part as follows:

"There is no probative evidence that he had any interest in the steel business, and as stated above, his own testimony by deposition upon questioning of his own attorney stated appellee was going to use the money appellant loaned him to buy steel in Houston and build his (appellee's) business in Lubbock.

"Appellant cites some other cases which involved collateral or side agreements which took the transactions out of usury but no such situations are shown in the record here.

"It is true the note shows upon its face ten per cent interest, but: 'The transaction is to be tested by its substance, not its form, and, if from all the facts its essence is found to be the receiving or contracting for a greater rate of interest than is allowed by law, the statutory consequences must be visited upon it.' Independent Lumber Co. v. Gulf State Bank, Tex.Civ.App., 299 S.W. 939 (Writ ref.).

"It has also been stated: 'Parties cannot by entering into a form of contract

valid and free from the taint of usury on its face under the cloak of such form violate our usury law without incurring its penalty.' Commercial Securities Co. v. Rea, Tex.Civ.App., 78 S.W.2d 707, affirmed 130 Tex. 11, 105 S.W. 872.

"A study of this record forces one to the conclusion, regardless of which party instigated the transactions, that they constituted loans which were usurious and that the trial court properly visited upon appellant the statutory consequences thereof."

We hold that under the record in this case the judgment of the trial court should be affirmed. Appellant's point is overruled.

The judgment of the trial court is affirmed.