**Bobby JOHNS, Appellant,**

v.

**Tom JAEB, Appellee.**

No. 18403.

Court of Civil Appeals of Texas, Dallas.

Dec. 12, 1974.

Michael E. Greenberg, Irving, for appellant.

Frank W. Hill, Hill, Branham & Graham, Arlington, for appellee.

GUITTARD, Justice.

In this suit to recover usury penalties, the principal question is whether defendant advanced funds to plaintiff as a loan or as a contribution to a limited partnership of which plaintiff was the general partner. The transaction was in the form of a limited partnership and an agreement of plaintiff to purchase defendant's interest in the supposed limited partnership. Since plaintiff was unconditionally obligated to repay in monthly installments the entire amount advanced plus a fixed sum, we hold that the transaction was in substance a loan. Accordingly, we reverse the summary judgment for defendant rendered by the trial court and sustain plaintiff's motion for summary judgment.

The affidavit and other documents filed in support of defendant's motion for sum-

mary judgment reveal the following facts. Plaintiff needed capital funds to go into the business of selling housewares. He applied to defendant, as president of a bank, for a loan. Defendant declined to make the loan on behalf of the bank, but decided to make a personal investment in the business. After consultation with an attorney selected by defendant, the parties agreed to form a partnership with plaintiff as general partner and defendant as limited partner, and defendant agreed to contribute $5,000 to the partnership. Accordingly, the attorney prepared and on March 22, 1973, the parties signed the following papers:

(1) A certificate of limited partnership for "Metropolitan Enterprises of Grand Prairie," listing plaintiff as general partner and defendant as limited partner. The amount of defendant's contribution is listed as "$5,000," and his share of the profits is listed as "99%."

(2) An agreement whereby plaintiff agrees to purchase defendant's partnership interest, and defendant agrees to sell it, for $6,500, to be evidenced by a promissory note in that amount. Title to the partnership interest is not to pass until the note is paid in full. Among other security for the note, the agreement provides that plaintiff pledges the inventory of the business and grants a lien on the inventory, and on any after-acquired inventory, "until said debt is retired." A salary of not more than $1,000 per month is allowed to plaintiff.

(3) A promissory note in the amount of $6,500 signed by plaintiff, payable to defendant, without interest, in six monthly installments of $1,083.33 each, beginning April 30, 1973.

After plaintiff paid the first two monthly installments on the note, the enterprise proved unsuccessful and was abandoned. When defendant inquired about the situation, plaintiff admitted that he was unable to pay his bills and that his liabilities exceeded his assets by about $18,000.

In this suit for usury penalties, plaintiff alleged that the transaction was a loan for $5,000 with interest of $1,500 for six months, and that this amount was more than double the interest allowed by law. Defendant answered, alleging that he entered into a partnership with plaintiff, that his payment of $5,000 was a contribution to the capital of the partnership, and that plaintiff agreed to purchase defendant's partnership interest for $6,500. Defendant counterclaimed for the balance of $4,333.34 on the $6,500 note and for an attorney's fee. Both parties moved for summary judgment. The court overruled plaintiff's motion and sustained defendant's motion, and plaintiff appeals.

Defendant argues in support of the trial court's judgment that the documents on their face show that the transaction was a partnership rather than a loan and that no summary-judgment evidence was presented indicating that the parties intended these documents as a subterfuge to disguise a loan for greater than the lawful rate of interest. We cannot agree because we conclude that the documents on their face show that the transaction was in substance a loan rather than a true limited partnership.

When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest, which may not exceed the statutory maximum, regardless of the form of transaction. Maxwell v. Estate of Bankston, 433 S.W.2d 229 (Tex.Civ.App.-Texarkana 1968, no writ); Campbell v. Oskey, 239 S.W. 332 (Tex.Civ.App.-El Paso 1922, no writ); see Jackson v. Cassidy, 68 Tex. 282, 4 S.W. 541, 544 (1887) and cf. Korth v. Tumlinson, 73 S.W.2d 1048, 1049 (Tex. Civ.App.-San Antonio 1934, no writ). Here the documents show an absolute obligation on the part of plaintiff to repay the amount advanced, together with an additional amount. Unlike a limited partner, defendant did not expose his $5,000 investment to the hazards of the business. His only risk was a creditor's risk that plain-

tiff would be unable or unwilling to meet the obligation to "purchase" his interest by paying the monthly installments. The so-called "purchase price" had no relation to the actual value of the interest. If the enterprise prospered, defendant expected no benefit beyond the $6,500 which plaintiff unconditionally obligated himself to pay, and if the enterprise failed, as it did, defendant expected to receive the same amount, and could lose no part of his investment unless plaintiff was unable to pay and the inventory and other collateral provided in the agreement proved insufficient.

■ Defendant insists that he never intended to charge usury, but his subjective intent is immaterial, since the intent of the parties is presumed to be reflected in the documents which they signed. Southwestern Inv. Co. v. Hockley County Seed & Delinting, Inc., 511 S.W.2d 724, 732 (Tex. Civ.App.-Amarillo 1974, writ ref'd n. r. e.). Consequently, we hold that the transaction was a loan rather than a contribution to a limited partnership.

■ The difficulty of fitting this transaction into the limited partnership mold is demonstrated by its failure to comply with the Uniform Limited Partnership Act, Tex.Rev.Civ.Stat.Ann. art. 6132a (Vernon 1970). Section 17 of that Act provides that a limited partner shall not receive from a general partner any part of his contribution until all liabilities of the partnership, except liabilities to partners on account of their contributions, have been paid or sufficient property of the partnership remains to pay them. Here the general partner was unconditionally obligated to purchase the interest of the limited partner, and thus repay his contribution, in six monthly installments, regardless of whether the partnership could pay its obligations. This express prohibition of the Act may not be evaded by the simple device of labeling the transaction a sale of the limited partner's interest.

Also, § 14 of the Act forbids the limited partner from receiving or holding as collateral security any partnership property in respect to any claim against the partnership. By the agreement here in question, the general partner pledged to the limited partner the entire inventory of the business until the note should be paid, and granted a lien on after-acquired inventory as well.

■ The provision in the agreement for defendant to receive 99% of the profits until the note is paid does not support his contention that a true partnership was intended. This provision is extraordinary, and is understandable only in light of the circumstance that for the first six months of the enterprise, any expectation of profit above the $1,000 per month salary allowed to plaintiff was quite remote. Even if a profit had been realized and paid to defendant, however, it would not convert the transaction from a loan to a true partnership, since there was no corresponding expectation that the amount to be paid to defendant would be reduced by partnership losses. When the amount invested is not subject to the risk of the enterprise because the party in charge has an absolute obligation to return the funds advanced, any profits agreed to be paid to the investor must be considered compensation for the use of the money, and therefore, interest. *See* Campbell v. Oskey, 239 S.W. 332, 334 (Tex.Civ.App.-El Paso 1922, no writ).

■ Defendant also argues that the judgment is correct because the depositions and affidavits show conclusively that any possible violation of the usury law is the result of "accidental and bona fide error" within Tex.Rev.Civ.Stat.Ann. art. 5069-1.-06(1) (Vernon 1971). In support of this argument he cites evidence that the parties consulted an attorney concerning the transaction and employed him to prepare the papers in question. This circumstance cannot relieve the transaction from the taint of usury. Ignorance of the usury law is not a "bona fide error" within the statute if the parties intended to make the bargain which they made. Townsend v. Adler, 510 S.W.2d 175, 176 (Tex.Civ.App.-Houston

861

[14th Dist.] 1974, no writ). There is no evidence here of an error in calculation, such as that held to be subject to reformation in Guetersloh v. C. I. T. Corp., 451 S.W.2d 759, 761 (Tex.Civ.App.-Amarillo 1970, writ ref'd n. r. e.).

██ Since we hold that the documents, when taken together, establish a usurious loan, the summary judgment for defendant must be reversed, and our duty under Texas Rules of Civil Procedure, rule 434 is to render the judgment which the trial court should have rendered. We conclude that the trial court should have sustained plaintiff's motion for summary judgment because usury was shown as a matter of law. Accordingly, we sustain plaintiff's motion, except with respect to plaintiff's claim for his attorney's fee, which must be determined by the trial court from the evidence as a matter of fact. Great American Reserve Ins. Co. v. Britton, 406 S.W.2d 901, 907 (1966).

In rendering judgment on plaintiff's motion, we must determine the amount of usury penalties to be assessed under Tex. Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon 1971), which provides as follows:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor twice the amount of interest contracted for, charged or received, and reasonable attorney fees fixed by the court provided that there shall be no penalty for a violation which results from an accidental and bona fide error.

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court . . ..

Subdivision (1) of this statute imposes a penalty of twice the amount of the interest contracted for, plus a reasonable attorney's fee. Subdivision (2) adds forfeiture of the principal as well if the interest contracted for is more than double the amount of interest allowed by law. Both penalties apply here, since the amount of interest contracted for is well in excess of twice the amount allowed by law. Interest of $1,500 for six months on a principal of $5,000 amounts to sixty per cent per annum, and the requirement of repayment in monthly installments brings it to more than one hundred per cent. Thus the amount of the penalty to be imposed here is twice the $1,500 interest ($3,000), plus the principal ($5,000), making a total of $8,000, plus a reasonable attorney's fee.

██ Plaintiff is not entitled to judgment for this whole sum, however, since he has paid only two installments of $1,083.33 each on the note for $6,500, leaving a balance of $4,333.34. Forfeiture of this balance is included in the penalties provided by the statute. Consequently, the amount of plaintiff's recovery here should be $8,000, less the forfeited balance of $4,333.-34, leaving a net recovery of $3,666.66, plus a reasonable attorney's fee. Texas Tool Traders v. W. E. Grace Manufacturing Co., 488 S.W.2d 498, 504 (Tex.Civ. App.-Dallas 1972), modified, W. E. Grace Manufacturing Co. v. Levin, 506 S.W.2d 580, 585 (Tex.1974). Recovery of this amount puts the parties in the same position as if plaintiff had paid the entire amount of the note and were awarded recovery of twice the interest plus the principal.

Accordingly, the judgment of the trial court is reversed, and partial summary judgment is here rendered for plaintiff in the amount of $3,666.66, and against defendant on his counterclaim. The cause is remanded to the trial court for determination of the amount of a reasonable attorney's fee.

Reversed and rendered, except with respect to the claim for attorney's fee, and in that respect reversed and remanded.

Costs are taxed against defendant, except the cost of including in the transcript the briefs of the parties in the trial court. Those briefs have not been helpful to us, and their inclusion is contrary to the express provision of the order of the Supreme Court dated October 3, 1972, which appears in the Texas Rules of Civil Procedure following Rule 376–a. Consequently, the cost of including those briefs is taxed against plaintiff.